435 P.2d 56

James R. HENDERSON and Margaret B. Henderson, his wife, Appellants,

v.

LAS CRUCES PRODUCTION CREDIT AS-SOCIATION, Luther M. Duke and Kathryn Duke, his wife, Joseph R. Vallee and Kathryn M. Vallee, his wife, E. H. Shumway and Lola M. Shumway, his wife, L. D. Shumway, and Transamerica Title Insurance Company, formerly Phoenix Title and Trust Company, Appellees.

No. 1 CA–CIV 482.

Court of Appeals of Arizona.
Division 1.

Dec. 14, 1967.

Rehearing Denied Jan. 17, 1968.

Review Denied March 5, 1968.

Divelbiss & Gage, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth, & Beshears, by Thomas A. McGuire, Phoenix, John P. Otto, Alamagordo, N. M., James T. Martin, Jr., Las Cruces, N. M., for appellee, Las Cruces Production Credit Association.

Marks & Marks, by Royal D. Marks, Phoenix, for appellee, Transamerica Title Ins. Co.

STEVENS, Judge.

This appeal involves a contest between a creditor of the seller of real estate by a recorded real estate agreement, the creditor having served a writ of garnishment upon an escrow holder, and a grantee-assignee of the seller. Both claim to be entitled to receive the installment payments thereafter due under the agreement of sale. The identification of the parties and the chronology of events are important.

The Las Cruces Production Credit Association is a New Mexico Corporation and was the plaintiff in an action filed in the Superior Court for Maricopa County being the action out of which this appeal arose. This party will be referred to as Las Cruces.

Mr. and Mrs. Duke were judgment debtors in a New Mexico judgment wherein Las Cruces was the judgment creditor. They will collectively be referred to as Duke. Duke sold land located in Gila County, Arizona to the Vallees and to the Shumways, who are collectively hereinafter referred to as Vallee-Shumway. The abstract of record and the briefs of the parties in connection with this appeal were served upon Duke and upon Vallee-Shumway. None of these parties to the Superior Court action, all of whom were named in the notice of appeal, have appeared in this Court in relation to this appeal. Although the record discloses that during the progress of the case Mr. Duke died and Mrs. Duke qualified as the executrix of his estate, the names will be carried forward herein merely under the designation of Duke.

The appellee, Transamerica Title Insurance Company, was formerly the Phoenix Title and Trust Company, and will hereinafter be referred to as Transamerica even though portions of the transactions which are vital to the consideration of this opinion occurred during the time that the business of this corporation was transacted under the name of Phoenix Title and Trust Company.

The appellants, Mr. and Mrs. Henderson, will be collectively referred to as Henderson.

Under date of 15 February 1963, Duke as seller and Vallee-Shumway as buyer, executed escrow instructions in the Phoenix office of Transamerica and these instructions were assigned No. 597290. The Phoenix office is located in Maricopa County, Arizona of which Phoenix is the County seat. The escrow related to real property located in Gila County, Arizona of which Globe is the County seat. There is evidence in the file that Transamerica also maintained an office in Globe, Arizona. Under the same date the same parties entered into a formal written agreement, the agreement and the escrow instructions relating to the same piece of property. The agreement was recorded in the office of the County Recorder of Gila County on 7 March 1963 in Docket 147 beginning at Page 379. The escrow instructions were not recorded. The agreement contains some references to Transamerica, these being in the printed portion of the agreement as distinguished from the typed portion of the agreement. The agreement makes reference to an escrow. The agreement is silent as to the escrow number and it is silent as to the Transamerica office wherein the escrow was established. The escrow instructions incorporate the agreement by reference but the agreement does not purport to incorporate the escrow instructions. The terms of payment in the two documents are not identical in language, the difference not being material in connection with the issues before us.

The agreement recited the consideration. The buyers were to take specified action to secure the relase of three identified recorded mortgages. The agreement did not require that the released documents be submitted to Transamerica. A Transamerica escrow with a number differing from the escrow now in question, was expressly cancelled by the agreement. Reference was made to the Flake-Porter Agreement, an agreement relating to a grazing permit on the premises involved in this transaction, recognizing that certain credits might arise therefrom, these to be handled without reference to the escrow. The agreement

provided that in the event that there were credits arising from the cancellation of the Flake-Porter contract, these could be deducted from the first installment which was to be paid under the agreement which is now before this Court. The printed portion of the agreement contains a fire insurance requirement and we are not advised as to whether the property was improved. If this is an applicable part of the agreement, the requirement specified that the insurance policy be deposited with Transamerica.

In addition to the various obligations imposed upon the respective parties, the agreement recited a cash consideration in the sum of $32,000 with a recitation that $10,000 thereof "has been deposited in escrow by the Buyers to the credit of the Sellers". In relation to the unpaid balance of $22,000 the agreement specified:

"The Buyers shall pay to the Sellers the sum of Twenty-two Thousand and no/100 Dollars ($22,000.00), without interest, provided the same is paid to the Sellers on or before November 1st, 1964. In the event all is not paid by November 1st, 1964, the Buyers shall then pay to the Sellers the sum of Seven Thousand, Three Hundred and Thirty-three and no/100 Dollars ($7,333.00) to apply against the principal balance, and the remaining unpaid balance shall then commence bearing interest at the rate of six per cent (6%) per annum and shall thereafter be paid one-half (1/2) of principal plus accrued interest, on November 1st, 1965, and the balance of principal, plus accrued interest, on November 1st, 1966."

It is interesting to note that the escrow instructions provide:

"BALANCE OF＿＿＿＿$22,000.00
Evidenced by Agreement for sale
Payable as follows: SEE OVER"

"FUTURE PAYMENTS UNDER AGREEMENT FOR SALE . TO BE PAID TO seller herein"

The schedule of payments indicated by the "SEE OVER" reference is silent as to any requirement that the payments be made through Transamerica. The escrow instructions contain an acceleration clause in the event of a transfer of interest by the buyer which clause does not appear in the agreement.

The agreement contained two printed paragraphs which are strongly urged upon this Court.

"The Warranty Deed of Seller conveying the herein described property to Buyer, subject to liens, encumbrances, reservations, restrictions and exceptions affecting the title to said property has been delivered in escrow with the Phoenix Title and Trust Company, and shall, as provided by the escrow instructions given to said company, be delivered to Buyer upon fulfullment of Buyer's obligation to Seller under the terms of this agreement.

*　　*　　*　　*　　*　　*

"No transfer or assignment of any rights hereunder shall be made by anyone having an interest herein, unless made in such manner and accompanied by such deeds and other instruments as shall be required by the Phoenix Title and Trust Company, nor until its regular escrow fee and other costs including its charge for the issuance of a new Title Insurance Policy shall have been fully paid, and all instruments deposited in escrow with it."

There is reference in the escrow instructions which might imply that payments could be made through Transamerica in that these instructions provided:

"ANNUAL COLLECTION CHARGES assumed as is

Followed by an "X" under the column heading "Buyer", indicating buyer's obligation to pay these charges in the event that money is paid through a Transamerica escrow.

The issues in the Superior Court were determined based upon carefully documented adverse motions for summary judgment and the record does not disclose any actual knowledge of the terms of the escrow instructions other than the knowledge enjoyed by Transamerica and the signatories thereto, Duke and Vallee-Shumway. In our

opinion, the escrow instructions were a private document and not a public record.

On 12 April 1963, Las Cruces filed a suit in the Superior Court for Maricopa County wherein the Dukes were the defendants basing its claim for relief upon the New Mexico judgment. In proper time, a default judgment was entered in favor of Las Cruces, this judgment having been entered on 23 May 1963, in the sum of $16,805.19, plus interest. There is no contest as to the validity of this judgment. On 10 June 1963, Las Cruces caused a writ of garnishment to issue naming therein seven banks and six title companies including Transamerica. In connection with the motions for summary judgment, Transamerica attached as an exhibit its office copy of the writ of garnishment which was served upon it and it is interesting to note that this copy disclosed a list of no less than 14 different offices as well as several departments of the company, all in Maricopa County. There were checked off before the answer to the writ of garnishment was filed. The Transamerica answer to the writ of garnishment was filed on 20 June 1963 and recited in part:

"That the garnishee-defendant, PHOENIX TITLE AND TRUST COMPANY, a corporation is holding for collection, under its Escrow No. 597290, a contract of sale under which contract the defendants, LUTHER M. DUKE and KATHRYN DUKE, his wife, sold certain real property to JOSEPH R. VALLEE, et al., and under which contract the sellers, LUTHER M. DUKE and KATHRYN DUKE, his wife, are to receive a total amount of $22,000.00 in annual payments of $7,333.00 beginning November 1, 1964, with interest at the rate of 6% per annum * * *."

Thereafter judgment was entered against Transamerica on its answer in garnishment in the amount of the Las Cruces—Duke judgment, with interest as provided in said judgment. The judgment against Transamerica as garnishee recites:

"* * * until the total of such indebtedness shall be paid out of Escrow No. 597290 held by the defendant-garnishee Phoenix Title & Trust Company, as such funds under the above numbered escrow shall come into the possession of defendant-garnishee pursuant to Escrow No. 579290, and not otherwise."

It is clear from the language of the judgment that Transamerica's liability was limited to the funds which it actually received in escrow. This judgment was prepared on the legal paper of the attorneys for Las Cruces and we must presume knowledge as to its content. The judgment was signed on 23 August 1963 and filed with the Clerk of the Court three days later.

Transamerica did not notify Duke, the seller or Vallee-Shumway the buyer, with reference to the garnishment, the answer or the judgment of 23 August 1963. Las Cruces took no steps to notify the parties to the agreement until September 1965, as more particularly appears later in this opinion.

On 20 June 1963, Duke assigned all of their interests in the payment due in November 1964 to Thorne, not a party to this action.

On 2 August 1963, Duke sold and assigned to Henderson the installments coming due in November 1965 and November 1966. In addition to the assignment, Duke executed a warranty deed to Henderson describing the real property in question. Both of these documents were recorded in the office of the County Recorder of Gila County on 6 August 1963. The assignment recited a consideration of $12,727; it briefly described the agreement and the County wherein it was recorded; it did not make express reference to the book and page of the recording of the agreement.

In March 1965, Las Cruces caused a writ of execution to issue based upon the Las Cruces—Transamerica garnishment judgment. Pursuant to this writ the Sheriff of Maricopa County sold the agreement to Las Cruces for $14,242.10 establishing a deficiency judgment in the sum of $4,379.24, which deficiency included an interest item in the sum of $1,697.31. Thereafter, and

for the first time, an effort was made to advise the buyers as to the Las Cruces claim to the proceeds of the agreement. This action was taken on 23 September 1965 when writs of garnishment addressed to Vallee-Shumway were issued. They filed a joint answer in garnishment disclosing the June 1963 Duke—Thorne agreement and the August 1963 Duke—Henderson agreement. Vallee-Shumway by their answers expressed a willingness to pay the unpaid portion of the agreement to whomsoever was entitled to the money. On 4 November 1965, Vallee-Shumway paid the sum of $8,213.67 into the office of the Clerk of the Superior Court the receipt for this sum being a part of the record on appeal.

On 2 December 1965, Henderson took their first steps toward intervention which was eventually granted. On 13 January 1966, Duke filed their disclaimer reciting both the Thorne and Henderson transactions and asserting that the Dukes no longer claimed an interest. Thereafter, Las Cruces and Henderson filed their respective motions for summary judgment. The trial court granted the Las Cruces motion and denied the Henderson motion. An appropriate formal written judgment was signed and filed and this appeal followed. After the giving of the notice of appeal, Transamerica was granted leave to pay into the office of the Clerk of the Superior Court those monies held by it in relation to this transaction. The amount is not specified in the order nor is the Clerk's receipt for the sum so deposited a part of the file forwarded to this Court and this Court is not informed as to the date or amount of the deposit.

The first issue to be disposed of is the sufficiency of the Henderson supersedeas bond.

■ Rule 73(k) (2) of the Rules of Civil Procedure, 16 A.R.S., under circumstances specified in the Rule, permits a supersedeas bond in a sum less than the full amount of the judgment. Hackin v. Superior Court, 102 Ariz. 93, 425 P.2d 420 (1967). The trial court fixed the supersedeas bond

in the sum of $2,000.00. The Hendersons secured a court order authorizing them to place with the Clerk of the Superior Court a savings passbook with a Savings and Loan Association wherein the balance was $2,-000.00. The savings and loan association was not permitted to disburse these funds without the authority of the Clerk of the Superior Court. Notice of this action was given to all parties. A.R.S. Section 7–107 is as follows:

"7–107. Sufficiency of bond; objection

In an action or proceeding in a state court, when a bond is required or permitted to be given, the adverse party may object to its sufficiency at any time within three days after receiving notice of giving the bond, by serving the adverse party, or the officer who takes the bond, with a written notice that he does not accept the bond. A failure to serve the notice shall be deemed an acceptance of the bond, and the officer taking it shall be exonerated from liability."

No objections were filed until the matter reached the Court of Appeals and we hold the bond to be valid and sufficient.

■ The record discloses an absence of conflict as to the facts necessary for the determination as to whether Las Cruces or Henderson is entitled to the proceeds from the agreement. This Court is not informed as to the actual dollar amount of these proceeds which are available. When a record is presented to an appellate court which leaves no question of fact to be determined and only a question of law to be determined, this Court may direct the entry of the judgment which should have been entered in the trial court. A.R.S. § 12–2103; State of Arizona ex rel. Conway v. State Land Department, 62 Ariz. 248, 156 P.2d 901 (1945).

■ Civil Rule 56(d) authorizes the entry of partial summary judgments as well as total summary judgments. It is our opinion that we may direct the entry of a partial summary judgment in relation to the party entitled to the proceeds, leaving for deter-

mination by the trial court the dollar amount which is available.

It must be noted that the issues which are presented to us are framed between Las Cruces, which bases its claim on a writ of garnishment, and an execution sale, and Hendersons who base their claim on an assignment and a warranty deed. The sellers have disclaimed any further interest. Vallee-Shumway, the buyers, do not urge that they have been damaged. Transamerica seeks to uphold its view as to the sanctity of the agreement and the escrow instructions. Transamerica does not urge that it has been damaged. Under these circumstances, the issues before us are limited to our consideration of the respective rights of Las Cruces and Henderson based upon the record.

■ The appellees urge that the Duke-Henderson assignment is not that type of document which may be recorded. They further urge that even though the County Recorder of Gila County performed all of the steps essential to recording, no legal notice of its contents was given to the public or to the appellees. We need not answer this contention in view of the recording of the Duke-Henderson warranty deed, a matter which we will treat later in this opinion. The escrow instructions were not acknowledged, a requirement in connection with recording, and no effort was made to record them. A.R.S. Section 33–411, subsec. B, specifies:

"B. An instrument shall not be deemed lawfully recorded unless it has been previously acknowledged in the manner prescribed in this chapter except in the case of master mortgages as provided in § 33–415."

A.R.S. Section 33–415 authorizes the recording of master mortgages and Subsection C thereof specifies:

"C. Thereafter any provisions of a recorded master mortgage may be included for any and all purposes in a mortgage by reference therein to any of such provisions without setting them forth in full, if the master mortgage is of record in the county in which the mortgage adopting or including by reference any provisions thereof is recorded."

We hold that even had the properly recorded agreement between Duke and Vallee-Shumway referred to the Transamerica escrow by number and by the office of the company wherein the escrow instructions were of record, a person searching the recorded title would not thereby have had legal notice as to its contents. As before stated, the escrow instructions were a private record maintained in an office of a private business corporation and they are not subject to inspection as a matter of right by any curious person who wished to see them. Public records are subject to that inspection. A person searching the title to real property located in Gila County has the right to find all public records in Gila County with limited exceptions. One exception would be the official probate file in a probate relating to real property in more than one county. Even in this situation the probate file is a public record subject to the inspection of the curious as well as those with an actual interest in the property.

We have pointed out the content of the escrow instructions only for the reason that had they been examined by Henderson, they would not have disclosed an obligation on the part of Vallee-Shumway to make the payments called for in the Duke agreement through a Transamerica escrow.

There are two Arizona cases which are cited by all parties to this appeal, Sabin v. Rauch, 75 Ariz. 275, 255 P.2d 206 (1953) and Weir v. Galbraith, 92 Ariz. 279, 376 P. 2d 396 (1962). The appellees urge that these cases require an affirmance of the trial court. We do not agree.

■ One issue in Sabin was the sellers demand for specific performance in an action between the parties to the agreement. The buyer defended on the basis that the seller could not deliver a merchantable title. This fact situation is vastly different from the position of the parties in the cause now under consideration. In Sabin, in addition to the agreement which was the subject of '

the request for specific performance, there were two additional agreements of sale in the chain of title, the sellers interest in one having been transferred to Raney and the sellers interest in the other having been transferred to Glick. These transfers had been effected by joint tenancy deeds. In relation to the transfer of the sellers interest in the earlier agreements the Supreme Court stated on page 279 of the Arizona Reports, 255 P.2d on page 208:

> "It appears from the Stone and Hill contracts that the Phoenix Title and Trust Company is the escrow agent in both of these transactions; that the balances due thereunder are to be paid to it, and that deeds from Stone and Hill have been delivered to the escrow agent for delivery to the purchasers therein when such balances are paid."

This situation does not appear in the cause now under consideration. On page 280 of the Arizona Reports, 255 P.2d on page 208 the Supreme Court further stated:

> "Raney and Glick by virtue of their joint tenancy deeds are no doubt entitled to receive these payments * * *."

Thus we see that by the warranty deed from Duke-Henderson assignment. It is for this came entitled to the future payments under the agreement even in the absence of the Duke-Henderson assignment. It is for this reason that we have heretofore stated that we need not decide the contentions of the appellees that the Duke-Henderson assignment was not a document which could be recorded and that the placing of the same in the records of the Gila County recorder was not notice of its contents.

The Weir case involves the garnishment of a title company in relation to an agreement of sale of real property. The writ was directed not only to the title company but also to all persons interested in the agreement of sale. It was pointed out by counsel that on page 287 of the Arizona Reports, 376 P.2d on page 401 referring to the agreement for the sale of real property, the Supreme Court stated: "It is in the usual form". Earlier in the opinion on page 282

of the Arizona Reports, 376 P.2d on page 398 the Supreme Court stated:

> "This contract was placed with the Arizona Title Guarantee and Trust Company for collection and all payments were made to that company."

The reply brief of the appellants quotes the evidence in the Weir case as follows:

> "$19,000.00 to be paid to Arizona Title Guarantee & Trust Company for the benefit of the Seller as follows:"

On oral argument of the case now under consideration one of the attorneys for the appellees acknowledged that this was an accurate quotation. Thus from the evidence before the Court in Weir, and from the language of the opinion, we note a fact situation which differs materially from the case now under consideration. The agreement before us required the buyer to pay the seller, as did the escrow instructions, and a fair reading of the agreement did not place a person searching the records in Gila County on notice that the payments were required to be made through a Transamerica escrow. Apparently, Duke did not so understand the agreement for Duke sold a fractional interest to Thorne and the balance to Henderson.

The appellants do not quarrel with the rule in Weir relative to the obligation of Transamerica to hold payments received under the agreement, if and when received, holding them subject to the writ of garnishment, the agreement containing a buyers absolute and not a conditional obligation to pay.

We come then to the consideration of the above quoted printed portion of the agreement beginning with the words "No transfer or assignment of any rights hereunder" and ending with the words, "all instruments deposited in escrow with it". This paragraph is not urged by the seller or by the buyer. This paragraph protects Transamerica from a transferee's demand for the title policy which was purchased in connection with the escrow for the benefit of the original buyer. We hold that under the posture of this case, the Hendersons were within

their rights when they purchased the sellers' remaining interest in the agreement and that they acquired title to that remaining interest.

This case is reversed with instructions to enter judgment granting the Henderson motion for summary judgment, a judgment which will establish that the Hendersons are entitled to the proceeds from the last two installments of the agreement. This entitlement is subject to the garnishees answer fees heretofore allowed, and to the fees which have been earned by Transamerica in connection with its handling of the transaction. The trial court is directed to ascertain the sum of money available to the Hendersons, incorporating the same in the judgment heretofore directed, together with all orders and directives necessary and proper for the payment of such judgment to the Hendersons.

CAMERON, C. J., and DONOFRIO, J., concur.