972 P.2d 669

**Charles LINK, a single man, Plaintiff/Appellant,**

v.

**PIMA COUNTY, a body politic, Defendant/Appellee.**

**No. 2 CA–CV 96–0211.**

Court of Appeals of Arizona, Division 2, Department B.

June 23, 1998.

Review Denied March 19, 1999.

Reconsideration Denied March 19, 1999.

Law Offices of Kevin Miniat, P.C. By Kevin E. Miniat and Jerald R. Wilson, Tucson, Attorneys for Plaintiff/Appellant.

Barbara LaWall, Pima County Attorney By Thomas E. Dugal, Tucson, Attorneys for Defendant/Appellee.

## OPINION

HOWARD, Judge.

¶1 Appellant Charles Link was injured in April 1993, when the vehicle he was driving was struck by another vehicle at the intersection of Thornydale and Overton Roads in Pima County. Although the County had conducted a traffic study of the intersection in 1991 which indicated that improvements should be made, construction of those improvements had not begun at the time Link was injured. Link sued the County, claiming that the two-and-one-half-year period between the initial study and construction of the improvements was unreasonably long

and that the County should have undertaken interim improvements, such as a temporary traffic signal or four-way stop signs, during the period between the study and construction.

¶2 Link appeals from the trial court's grant of summary judgment for the County on the claim that the construction delay was unreasonably long. He also appeals from the judgment following a jury verdict in favor of the County on his claim that the County failed to make interim improvements. We affirm the summary judgment and reverse the judgment based on the jury verdict.

### Unreasonable Delay in Construction

#### 1. Untimely Disclosure

¶3 Link first claims the trial court abused its discretion by disallowing as untimely Link's detailed factual support on the unreasonable delay claim and striking the affidavit of Robert Bleyl, Link's traffic engineering expert. "The trial court has broad discretion in ruling on discovery and disclosure matters," and we will not disturb its ruling absent an abuse of discretion. *Rosner v. Denim & Diamonds, Inc.*, 188 Ariz. 431, 434, 937 P.2d 353, 356 (App.1996).

¶4 Parties are required to voluntarily disclose the factual basis for each claim, a general description of documents they intend to use at trial, the names and addresses of the expert witnesses they intend to call at trial, and the substance of and grounds for the experts' opinions. Ariz.R.Civ.P. 26.1(a), 16 A.R.S.[1] Disclosures shall include information "in the possession, custody and control of the parties as well as that which can be ascertained, learned or acquired by reasonable inquiry and investigation." Ariz. R.Civ.P. 26.1(b)(3). Parties are required to seasonably amend their disclosures "whenever new or different information is discovered or revealed" and are not permitted to use information disclosed less than sixty days before trial except by leave of court. Ariz. R.Civ.P. 26.1(b)(2). The trial court can ex-

---

1. We refer to the rules in effect at the time discovery was conducted in this matter.

clude evidence that is not timely disclosed. Ariz.R.Civ.P. 26.1(c).[2]

¶ 5   In 1994, Link filed a supplemental disclosure statement, stating as the factual basis for his claim of unreasonable delay the general allegation that the 1991 recommendation to improve the intersection was not implemented until the middle of 1993. In January 1995, Link filed another supplemental disclosure statement, identifying Robert Bleyl as his traffic engineering expert who would testify at trial that the two-and-one-half-year delay was inordinately long. In June, Link filed yet another supplemental disclosure statement, stating he intended to rely at trial on Bleyl's testimony and "[a]ny and all documents produced by Pima County in connection with the subject intersection." In July, however, Bleyl was deposed and testified that two and one-half years "was an appropriate period of time to do all the things that needed to be done."

¶ 6   Three months later, in a motion to preclude the County's expert witness, Link reiterated his claim that the two-and-one-half-year delay was unreasonable. Realizing then that Link had not abandoned that claim despite Bleyl's deposition testimony, the County filed a motion for summary judgment on the grounds that Link had failed to produce required expert testimony to support his claim and that the County had absolute immunity as to that claim.

¶ 7   In response to the motion, Link detailed for the first time, one month before trial, the factual support for his unreasonable delay claim. He also attached an affidavit from his attorney, which stated that he had not provided Bleyl with the documents relied on in the response to the motion for summary judgment to support the claim of unreasonable delay. Two weeks before trial, Link supplemented his response with an affidavit from Bleyl in which Bleyl stated that he had reviewed Link's opposition to the motion for summary judgment, the supporting statement of facts, and the attached exhibits, and

that he now concluded the delay was unreasonable. Link did not attempt to provide good cause for the untimely disclosure or to explain the lack of diligence in pointing out the facts underlying his claim to the County or to his own expert.

■   ¶ 8   Link argues Bleyl's affidavit was untimely only because the County's motion for summary judgment was untimely.[3]   We disagree. Link was required to seasonably update his disclosures and failed to do so. Although Link disclosed in June that he intended to rely at trial on County documents to support his claim, he did not detail the facts upon which he intended to rely or provide Bleyl with the documents necessary for him to form his expert opinion until October or November, after the motion for summary judgment had been filed and after the sixty-day disclosure deadline had passed. Link does not claim that these facts were in any way unavailable to him prior to that time. This information was either within Link's possession or was obtainable by reasonable investigation, Rule 26.1(b)(3), and should have been disclosed and provided to Bleyl before his deposition in order for the deposition to be beneficial in the discovery process. Both the underlying facts and Bleyl's opinion were certainly required to be disclosed earlier than one month or two weeks, respectively, before the trial.

¶ 9   Further, the County properly treated Bleyl's deposition testimony, which contradicted the January disclosure, as amending Link's prior disclosures. *See* State Bar Committee Note to Rule 37(c) ("[T]he disclosure of the information need not be in a formal disclosure statement but can be in . . . [a] deposition."). Link was aware of Bleyl's unfavorable testimony at or shortly after his deposition was taken. Link's attempt to supplement his disclosure with Bleyl's affidavit, submitted two weeks before trial and more than three months after his deposition, was not a seasonable or timely update of the

---

**2.**   Rule 26.1(c) was deleted effective December 1, 1996. On that same date, amended Rule 37(c)(1) became effective, codifying the holding in *Allstate Insurance Company v. O'Toole*, 182 Ariz. 284, 896 P.2d 254 (1995), which had modified the requirements of former Rule 26.1(c).

**3.**   The trial court permitted the County to file the motion for summary judgment less than sixty days before trial. Link has not appealed this ruling.

prior disclosure by deposition. Rule 26.1(b)(2) ("[A]dditional or amended disclosures shall be made seasonably, but in no event more than thirty (30) days after the information is revealed to or discovered by the disclosing party."). Similarly, detailing one month before trial specific facts underlying the claim that unreasonable delays occurred within and between individual preconstruction phases, is significantly different than alleging generally that a two-and-one-half-year delay is unreasonably long; it also is untimely. Link offered no justification for failing to seasonably update the disclosure of the facts or Bleyl's opinion.

■ ¶ 10 Link contends his "technical" violation of the disclosure rule was harmless. Link, however, attempted to create an issue, uncontested after Bleyl's deposition, just two weeks before trial. In arguing lack of prejudice, he relies on *Allstate Insurance Co. v. O'Toole,* 182 Ariz. 284, 896 P.2d 254 (1995). The supreme court in *Allstate* cited with approval our decision in *Jones v. Buchanan,* 177 Ariz. 410, 868 P.2d 993 (App.1993), which stands for the proposition that disclosure of new witnesses just prior to trial may be prejudicial enough to require their exclusion. After his deposition, Bleyl clearly could not have been considered an expert witness for Link on the unreasonable delay claim. The later disclosure of his new opinion, therefore, was similar to the expert disclosure violations discussed in *Jones.* Furthermore, the degree of prejudice is just one factor to be considered among the several detailed in *Allstate,* and now, under current Rule 37(c)(1).[4] The State Bar Committee Notes to that amended rule state:

> Although the Allstate factors allow flexibility, those militating against the use of late disclosed evidence gain strength as the trial nears. Late disclosure will prejudice the opposing party if there is insufficient time to investigate fully and prepare rebuttal before the date for final supplementation of disclosures. Prejudice is also inherent when a trial must be continued after the parties have spent time and re-

sources in preparation. The rule requires full, early and continuous disclosure. Gamesmanship at any stage of the proceedings should be addressed strongly.

¶ 11 Here, Link, in substance, attempted to add a new expert opinion on a significant theory of liability and previously undisclosed facts to support that theory well after the sixty-day deadline. The County obviously had no opportunity to investigate fully and prepare rebuttal before the disclosure deadline because that had passed before the information was disclosed. Under the circumstances, the trial court did not abuse its broad discretion after weighing all the factors in *Allstate,* including, but not limited to, prejudice, by refusing both the untimely facts and Bleyl's untimely affidavit.

### 2. *Summary Judgment*

■ ¶ 12 We review *de novo* the propriety of granting summary judgment, *Phipps v. CW Leasing, Inc.,* 186 Ariz. 397, 923 P.2d 863 (App.1996), and "view the facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Southwest Auto Painting & Body Repair v. Binsfeld,* 183 Ariz. 444, 445 n. 1, 904 P.2d 1268, 1269 n. 1 (App.1995). We will uphold the trial court if it is correct for any reason. *Logerquist v. Danforth,* 188 Ariz. 16, 932 P.2d 281 (App.1996). A motion for summary judgment "should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶ 13 The County relied on Bleyl's deposition testimony that the length of time to complete the construction project was "an appropriate period of time to do all the things that needed to be done" and its own traffic engineering expert's similar opinion. To avoid summary judgment, therefore, Link was required to present a disputed issue of fact on the reasonableness of the delay.

---

**4.** At oral argument, Link's counsel indicated that, prior to the County's motion arguing that expert testimony was necessary, he had intended to present his case without expert testimony, thus negating his claim that Link was prejudiced when the trial court precluded Bleyl's affidavit.

¶ 14 After the exclusion of his untimely disclosed evidence, Link's response to the motion relied solely on his unsupported claim that the two-and-one-half-year delay was unreasonable. The County explained the causes for much of the time that had elapsed, and the County's expert and Link's own expert stated that the time period was reasonable. Based on the quantum of evidence required, Link's bare allegation had so little probative value that a reasonable jury could not agree with his position. *Orme School.* The trial court, therefore, correctly granted summary judgment on his claim of unreasonable delay.

¶ 15 Based upon our resolution of this issue, we need not decide if Link was required to produce expert testimony to support his claim. The expert testimony, however, was properly considered by the trial court. *See* Ariz.R.Evid. 702, 17A A.R.S.; *Baroldy v. Ortho Pharmaceutical Corp.,* 157 Ariz. 574, 760 P.2d 574 (App.1988). We also need not consider the County's claim of immunity on this issue.

### *Failure to Provide Interim Measures*

¶ 16 After trial, the jury found for the County on Link's claims that the County had negligently failed to undertake interim measures, specifically, an interim traffic light or interim four-way stop signs, after the traffic study was conducted. Link contends the trial court committed reversible error by allowing the jury to decide whether the County was entitled to absolute immunity from those claims pursuant to A.R.S. § 12–820.01. We will reverse a jury verdict when a jury instruction was erroneous and prejudicial to the appealing party's substantive rights. *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 917 P.2d 222 (1996).

¶ 17 At the County's request, the court gave the following jury instruction, which quoted § 12–820.01 but provided no further guidance:

A. A public entity shall not be liable for acts and omissions of its employees constituting:

\*        \*        \*        \*        \*        \*

2. The exercise of an administrative function involving the determination of fundamental governmental policy.

B. The determination of a fundamental governmental policy involves the exercise of discretion and shall include, but is not limited to:

1. A determination of whether to seek or whether to provide the resources necessary for:

\*        \*        \*        \*        \*        \*

(b) the construction or maintenance of facilities.

2. A determination of whether and how to spend existing resources, including those allocated for facilities.

¶ 18 Absolute immunity is a question of statutory interpretation and is, therefore, a question of law for the trial court, subject to this court's *de novo* review. *Goss v. City of Globe,* 180 Ariz. 229, 883 P.2d 466 (App.1994). *See also Galati v. Lake Havasu City,* 186 Ariz. 131, 920 P.2d 11 (App.1996); *Carroll v. Robinson,* 178 Ariz. 453, 874 P.2d 1010 (App.1994). Because absolute immunity is related to a defendant's status, *see Green Acres Trust v. London,* 141 Ariz. 609, 688 P.2d 617 (App.1984), usually there are limited factual determinations necessary to resolve the issue. If an absolute immunity defense is raised and related factual issues exist, those issues should be resolved by the jury as in qualified immunity cases. *See Chamberlain v. Mathis,* 151 Ariz. 551, 729 P.2d 905 (1986). In the absence of such factual issues, or after they are resolved by the jury, however, the court should apply the statute and resolve the immunity issue.[5] *Chamberlain; Carroll.*

¶ 19 To support its claim that the jury is permitted to decide immunity, the County relies on federal cases involving qualified immunity. Those cases, however, involve issues that are not present in absolute immunity determinations, such as "a determination of reasonable suspicion or probable cause" and "the determination of what conduct underlies the alleged violation." *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.

5. Special interrogatories may also be a useful        tool in aiding the court to resolve this issue.

1993). Moreover, the United States Supreme Court has held that the court decides even qualified immunity. *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The Court in *Hunter* stated that immunity was intended to protect the defendant from suit, not just liability, and should be resolved by the court "at the earliest possible stage in litigation." 502 U.S. at 227, 112 S.Ct. at 536, 116 L.Ed.2d at 595. We do not, therefore, believe the federal cases the County cites support its position that the jury is allowed to decide immunity.

¶ 20 Although the County claims that the trial court "felt that there was an issue about whether county officials considered interim measures, and exercised some discretion," it does not cite any portion of the record demonstrating an actual factual dispute about whether it had considered interim measures, their expense, or the level of decision-making involved. In addition, the County has not cited any cases, nor have we found any, authorizing the jury to consider and determine the issue of absolute immunity in a case like this. It was the function of the trial court to decide whether the County's actions related to "fundamental governmental policy," A.R.S. § 12–820.01(A)(2), and whether the County was, therefore, entitled to absolute immunity. Additionally, counsel for the County admitted at oral argument that submitting the immunity issue to the jury was error. Thus, we find the trial court erred in permitting the jury to determine this issue.

¶ 21 The County next argues that the error was harmless. According to its answering brief, however, the County had conceded "throughout the case" that it was not entitled to immunity on Link's claim that it had negligently failed to install four-way stop signs as an interim measure. The jury instruction did not differentiate between the traffic signal claim and the four-way stop sign claim, but rather allowed the jury to consider absolute immunity on both. Based on this record, allowing the jury to consider a defense the County concedes did not apply to the stop sign claim would not appear harmless. Further, although the jury might have found the County was not negligent, it rendered a general verdict. Therefore, we must reverse. *See Continental Life & Acc. Co. v. Songer,* 124 Ariz. 294, 603 P.2d 921 (App. 1979) (erroneous instruction followed by general verdict requires reversal, although jury might have decided issue on other grounds).

¶ 22 The County contends that, despite any error regarding the alleged failure to install stop signs, it is still entitled to absolute immunity concerning its alleged failure to install traffic lights as an interim measure, rendering any error in instructing the jury on absolute immunity harmless as to that claim. Although the parties argue this issue, they make few specific citations to the record and their arguments are somewhat general and conclusory, seeming to focus on whether the County made a discretionary decision. The Arizona Supreme Court has recently discussed the impact of an exercise of discretion on immunity:

> Even where discretion is exercised, administrative decisions within government do not necessarily involve determinations of fundamental governmental policy. To be absolutely immune, therefore, fundamental governmental policy is the element which, first and foremost, must be present in the decision making process. Once that element is found to exist, the exercise of discretion, under the statute, may be presumed. The term "discretion" is used in the statute only to define an essential characteristic of determinations involving fundamental governmental policy.
>
> Thus, in appropriate cases, the legislature has granted absolute immunity in the field of administration for the reason that immunity protection of government officers is warranted when fundamental governmental policy making is at stake, but not otherwise. Examples of policy decisions entitled to immunity may include such matters as whether government or its agencies should pursue one general course of action over another, whether an agency of government should construct a particular building or where the building should be located, or a decision as to the direction and focus of an entire regulatory scheme. The legislature has also determined, by express statutory direction, that certain specified functions *shall* be accorded absolute immunity. These include decisions on whether to provide resources for the pur-

chase of equipment, the construction or maintenance of facilities, the hiring of personnel, the provision of governmental services, and the licensing and regulation of professions and occupations. *See* A.R.S. § 12–820.01(B).

*Fidelity Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 225–26, 954 P.2d 580, 583–84 (1998) (emphasis in original). *See also* Restatement (Second) of Torts § 895B cmt. d (1977) (upon which A.R.S. § 12–820.01 is based).

¶ 23  Although, in a proper case, this court may simply decide an issue of law without remanding, *Henderson v. Las Cruces Production Credit Association*, 6 Ariz.App. 549, 435 P.2d 56 (1967), we decline to do so here.  Based on the record, we cannot determine as a matter of law that the county is absolutely immune from Link's claim concerning interim traffic signals, nor can we conclude that submitting that issue to the jury was harmless.  Further, resolution of the immunity issue may not dispose of the entire case, particularly, if the County abides by its prior concession that it is not entitled to immunity on the stop sign claim.  *See* A.R.S. § 12–820.03; *Galati.*  On remand, the trial court will be able to consider, after additional briefing by the parties and such other proceedings as are appropriate, whether the County was entitled to legislative or administrative absolute immunity on Link's claim that the County should have undertaken interim measures, such as installation of stop signs or interim traffic signals.

¶ 24  Because the jury instruction was erroneous and prejudicial, we reverse the judgment entered on the verdict and remand the case for further proceedings in accordance with this opinion.  Because we reverse, we need not consider Link's remaining arguments.  *See Lopez v. Farmers Ins. Co. of Arizona*, 177 Ariz. 371, 868 P.2d 954 (App. 1993).  As previously stated, we affirm the trial court's grant of summary judgment on the unreasonable delay claim.

PELANDER, P.J., and ESPINOSA, J., concur.