NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DUSTIN DEROSIER, a married man,
*Plaintiff/Appellant*,

*v.*

STATE OF ARIZONA, a governmental entity; CHARLES RYAN,
in his official capacity as Director of the Arizona Department of
Corrections,
*Defendants/Appellees*.

No. 1 CA-CV 14-0145
FILED 8-6-2015

Appeal from the Superior Court in Maricopa County
No. CV2010-032990
The Honorable J. Richard Gama, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Robbins & Curtin, PLLC, Phoenix
By Anne E. Findling
*Counsel for Plaintiff/Appellant*

Shorall McGoldrick Brinkmann, Phoenix
By Scott M. Zerlaut
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.

---

**B R O W N**, Judge:

¶1 Dustin DeRosier appeals the trial court's judgment in favor of the State of Arizona and Charles Ryan, director of the Arizona Department of Corrections (collectively, "the State") relating to serious injuries inflicted on DeRosier by other inmates while in prison. DeRosier argues the court erred in granting the State's motion for summary judgment on his claims arising under the Arizona Civil Rights Act ("ACRA"), the federal Americans with Disabilities Act ("ADA"), and the federal Rehabilitation Act of 1973 ("RA"). DeRosier also asserts the court should not have dismissed his gross negligence against the State claim because it was not included in the summary judgment proceedings, a point the State concedes. We therefore vacate that portion of the judgment to the extent it purports to dismiss DeRosier's gross negligence claim against the State and remand for proceedings consistent with this decision. As to the remaining claims, we affirm.

**BACKGROUND**

¶2 After DeRosier's probation grant was revoked and he rejected another probation grant, DeRosier was ordered to serve a ten-month mitigated prison term for a conviction of child abuse, a class six undesignated offense. DeRosier's incarceration with the Arizona Department of Corrections ("ADOC") started on August 7, 2009, at the Arizona State Prison Complex Phoenix Alhambra Reception Center ("ASPC-Phoenix"). DeRosier was immediately transferred to the mental health unit to receive treatment for a preexisting mental illness.

¶3 ADOC offered a program ("the Program") to house inmates convicted of sex crimes or child abuse separately from the general population because such inmates may have a greater risk of being assaulted by other inmates given the nature of their crimes. Three days after he was transferred to the mental health unit, DeRosier was provided a housing form that gave him the option of electing to be placed either in the "Sex Offender yard" or with the general prison population. DeRosier signed the

housing form in the space provided adjacent to the option that indicated he was "NOT requesting placement in a Sex Offender yard" and that he "wish[ed] to be placed in a GENERAL POPULATION yard."

**¶4**　　　In December 2009, DeRosier was released from the mental health unit and transferred to the general prison population at ASPC-Lewis consistent with his selection on the housing form. Within hours of arriving at ASPC-Lewis, DeRosier was assaulted by inmates who discovered that DeRosier had been convicted of child abuse. DeRosier sustained severe permanent injuries and underwent multiple surgeries.

**¶5**　　　In December 2010, DeRosier filed a complaint against the State, alleging it acted with gross negligence because it knew or had reason to know that it was placing DeRosier in "circumstances creating an unreasonable risk of bodily harm with a high probability that substantial harm would result." DeRosier also alleged, as a disabled individual, the State violated his rights under the ACRA, the ADA, and the RA by failing to implement policies and train employees to deal with inmates who have mental disabilities. DeRosier further alleged that the State needlessly endangered him because it knew he would likely be a victim of inmate violence based on his disability.

**¶6**　　　In August 2013, the State moved for summary judgment, arguing no reasonable jury could find that the State discriminated against DeRosier in violation of the ACRA, the ADA, or the RA. The State also argued the gross negligence claim against Ryan should be dismissed because he was entitled to absolute immunity under Arizona Revised Statutes ("A.R.S.") section 31-201.01(F). In response, DeRosier argued that his participation in the Program was "limited by his mental illness and no accommodation was made for his disability." He asserted that if he had been "fully able" to participate in the Program, the assault would not have occurred.

**¶7**　　　Following oral argument, the trial court accepted the parties' stipulation that the gross negligence claim against Ryan should be dismissed. The court then granted the State's motion, finding that DeRosier had failed to meet his burden of showing that a reasonable jury could infer that anyone at ADOC "deliberately discriminated against him because of his disability or that any such discrimination was the product of deliberate indifference." DeRosier timely appealed.

**DISCUSSION**

¶8        A motion for summary judgment should only be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We review the trial court's grant of summary judgment de novo, viewing the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Link v. Pima County*, 193 Ariz. 336, 340, ¶ 12, 972 P.2d 669, 673 (App. 1998).

¶9        As applicable here, the ACRA, the ADA, and the RA prohibit discrimination in specified circumstances against individuals with disabilities.[1] Title II of the ADA addresses discrimination by a public entity, which includes a "State or local government [or] . . . any department [or] agency . . . of a State . . . or local government[.]" 42 U.S.C. § 12131(1)(A)-(B). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

¶10        To establish a prima facie claim under Title II of the ADA, a plaintiff must show:

> 1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public

---

[1]        The ACRA provides that all public buildings and facilities shall comply with the ADA. A.R.S. § 41-1492.01. The ACRA prohibits discrimination "on the basis of disability" regarding the provision of goods, services, privileges, advantages, and accommodations. A.R.S. § 41-1492.02. DeRosier suggests that the ACRA should be construed more broadly, and thus grant greater protections, than the ADA; however, he did not raise that contention in the trial court. *See Dillig v. Fisher*, 142 Ariz. 47, 51, 688 P.2d 693, 697 (App. 1984) (explaining a party waives an argument by failing to raise it in the trial court and cannot raise it for the first time on appeal). We therefore analyze his ACRA claim and ADA claim by the same legal standards.

entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (citation omitted). Title II of the ADA applies to the operation of state prisons. *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 909-10 (9th Cir. 2013). States "must ensure that disabled prisoners are not discriminated against with regard to the provision of the benefits of their services, programs, or activities on account of a prisoner's disability." *Id.* at 909 (internal quotations omitted).

¶11 Similarly, under the RA, "no otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a prima facie claim under the RA, a plaintiff must show:

> (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.

*Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (internal quotations and emphasis omitted).

¶12 For purposes of the summary judgment proceedings, the State does not dispute that Arizona is a public entity and recipient of federal funding. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Nor does the State dispute that (1) DeRosier's mental illness is a qualifying disability under the ACRA, the ADA, and the RA; and (2) he was eligible to be housed in a separate prison facility based on his conviction for child abuse. Thus, we address only whether DeRosier has presented genuine issues of disputed material facts that the State discriminated against him by denying participation in the Program and it did so because of his disability.

¶13 DeRosier argues the court erred because it failed to acknowledge that the State excluded him from participation in the Program or denied him the benefit of the Program. Stated differently, DeRosier asserts that the State made no attempt to accommodate his disability (schizophrenia, paranoia, and other psychotic disorders) or address his mental instability at the time of the intake process to ensure that he made a knowing and voluntary decision when he signed the housing form.

According to DeRosier, he was incapable of making an election at that time given the instability attributed to his disability.

¶14 At the outset, DeRosier asserts that the trial court's ruling is undermined by erroneous factual statements in the minute entry granting summary judgment for defendants. Admittedly, the court erred when it stated that DeRosier completed the housing form after he was "deemed psychologically stable." The evidence shows he was given the housing form within three days after being placed in the mental health unit and at a time he had not been deemed psychologically stable. The court also erred in stating that DeRosier was unable to identify any apparent motive for the attack, as DeRosier identified evidence supporting a reasonable inference he was attacked because had been labeled a "baby beater."

¶15 Notwithstanding these inaccuracies, DeRosier has failed to identify evidence in the record indicating that the State denied him the benefits of the Program. Instead, the record shows that DeRosier waived the benefits of the Program (separate housing) when he elected to be placed in the general prison population and signed the housing form. DeRosier cites no authority supporting his assertions that the State was obligated, under the ACRA, the ADA or the RA, to take affirmative measures to ensure that he made a knowing and voluntary decision regarding participation in the Program apart from presenting him with the housing form for his consideration.

¶16 To the contrary, relevant case law holds that the "reasonable accommodation" requirement of a public entity is not triggered unless both the disability and the need for an accommodation is patently obvious or a request for accommodation has been made. *See Shedlock v. Dep't of Corr.*, 818 N.E.2d 1022, 1031, 1034 (Mass. 2004) (holding "[p]rison officials are not required to anticipate a prisoner's unarticulated need for accommodation or to offer accommodation sua sponte," and concluding the state was not liable for failing to offer accommodation (of a first-floor cell) before an inmate obtained a medical order verifying the need for such accommodation, notwithstanding that the inmate's serious physical injuries were confirmed at prison intake and the inmate always used a cane to walk); *see also Robertson v. Las Animas County Sherriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007) (explaining that a public entity "must have knowledge that an individual's disability limits her ability to participate in or receive the benefits of its services"); *Brown v. County of Nassau*, 736 F. Supp. 2d 602, 618 (E.D.N.Y. 2010) (holding a genuine issue of material fact existed as to whether a deaf inmate's need for accommodation (to contact his attorney and participate in a probable cause hearing via closed-circuit

television) was patently obvious, thereby precluding summary judgment in favor of the state on the inmate's ADA claims).

¶17 Here, the record reflects that the State was aware of DeRosier's disability, having been placed in the mental health unit for schizophrenia and paranoia, but there is no evidence that, based on either his presentation at intake or other information, the State was aware of a need to provide an accommodation to ensure that he made a knowing and voluntary decision to decline to participate in the Program. Thus, DeRosier has not met his burden of establishing the existence of a genuine issue of material fact as to whether the State discriminated against him by denying him the opportunity to participate in the Program.

¶18 Furthermore, DeRosier has not directed us to any evidence in the record showing he was excluded from the Program based on his disability or that he was treated differently than any other inmate. *See Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) ("[I]t is important to bear in mind that the purposes of [the ADA and RA] statutes are to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied."). DeRosier was eligible for participation in the Program, but declined to request that he be housed in a separate facility. Under the ACRA, the ADA or the RA, DeRosier has failed to establish a prima facie case of discrimination and therefore the State is entitled to judgment as a matter of law on those claims.[2]

---

[2] Given our resolution of the case, we need not address the parties' competing views of whether a plaintiff can recover money damages under the ADA or the RA absent proof of intentional discrimination by the defendant, or whether the standard is "deliberate indifference."

## CONCLUSION

**¶19** We affirm the trial court's judgment in favor of the State on DeRosier's ACRA, ADA, and RA claims. DeRosier has neither met his burden of establishing that he was excluded from the Program nor shown that his exclusion was due to his disability. We vacate, however, that portion of the judgment purporting to dismiss DeRosier's claim of gross negligence against the State, and remand for further proceedings.



Ruth A. Willingham · Clerk of the Court
FILED: RT