[Civil No. 4169. Filed April 15, 1940.]

[101 Pac. (2d) 209.]

E. POWER CONWAY, Appellant, v. HATTIE L. MOSHER, a Widow; COIT I. HUGHES and HATTRUDE B. HUGHES, Wife of COIT I. HUGHES, Appellees.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellant.

Mr. E. E. Selden, for Appellees.

ROSS, C. J.—This is an action by plaintiff, E. Power Conway, claiming to be the owner of lots 6 and 7, block 14, East Evergreen Addition to the City of Phoenix, Maricopa county, to have a tax deed thereof issued by the county treasurer to Coit I. Hughes declared invalid and to have plaintiff's title to said lots declared free and clear of all encumbrances, except as to any lien thereon held by defendants on account of taxes paid for tax deed and tax liens in favor of the state for state and county taxes. As to these taxes and tax liens, plaintiff offers to pay them when the amount is determined by the court.

In a trial without a jury, judgment went for defendants and plaintiff has appealed, assigning several reasons why such judgment should be reversed and his prayer granted. His first point is that in another proceeding between the same parties concerning the title to lots 6 and 7, it was determined, in effect, that Hughes had no title but only liens for the taxes he had paid for tax deed. The facts relied upon to support this proposition are not in dispute and are stated as follows:

On November 20, 1935, the plaintiff became the owner of said lots by purchase at a sale thereof to

satisfy paving improvement liens assessed against them, and received a deed for each lot from the city treasurer of the city of Phoenix.

On February 8, 1936, plaintiff Conway brought an action against the former owner, Hattie L. Mosher, and a number of her creditors, including Coit I. Hughes and his wife Hattrude B. Hughes, Maricopa county, and the city of Phoenix, to quiet his title to the lots. Mosher, Coit I. Hughes and his wife joined in an answer denying that plaintiff was the owner of the lots and alleging the owner to be Hattie L. Mosher. Maricopa county in its answer set forth that the county and state taxes on the lots were delinquent for the years 1927 to and including 1935; that in July, 1932, the county treasurer sold the lots to the state for the taxes for the years 1927 to 1930, both inclusive, and issued to the state, the buyer, certificates of purchase.

On December 22, 1936, the court rendered its judgment quieting plaintiff's title against all of the defendants except Maricopa county and the city of Phoenix. As to Maricopa county, it was decreed that it has ''a lien for unpaid taxes against the above described property, as follows:'' (Here are enumerated the taxes for 1931, 1932, 1933, 1934, 1935 and 1936.) No mention is made in the judgment of tax certificates or tax liens for the years 1927–1930.

On August 20, 1937, defendant Coit I. Hughes bought an assignment from the state of Arizona of its certificate of purchase of lot 7, and on August 27, 1937, he bought an assignment of its certificate of purchase for lot 6 from the state, and thereafter, on February 23, 1938, he received from the county treasurer a tax deed of said lots.

Thus it is seen that whatever title Hughes has to the lots he obtained by virtue of the tax deed dated February 23, 1938. Plaintiff claims that such title

is not good for several reasons, the first being that the judgment in the action to quiet title between Conway and Mosher (see *Mosher* v. *Conway*, 51 Ariz. 275, 76 Pac. (2d) 231) conclusively adjudicated that the two certificates of purchase issued to the state by the county treasurer for taxes for the years 1927–1930, upon which the defendant's tax deed was issued, were void and of no effect. The basis for this claim is that Maricopa county in the action to quiet title submitted to the court in its answer the validity of the two tax certificates upon which defendant depends for his title along with the claim of tax liens on said property for the years 1931–1936, and that the court's judgment preserved the latter liens but ignored the certificates of purchase and thereby adjudged them invalid and of no effect.

While delinquent taxes when collected are apportioned between the state and county and to the several funds for which they are levied and collected, the statutory liens on the property assessed run in favor of the state. Section 15, chapter 103, Laws of 1931, provides:

"Taxes upon real estate, if unpaid, shall become delinquent on the first Monday in November and the first Monday in May of each year, and the county treasurer shall enforce the lien of the state upon such real estate, as provided herein. Failure to properly return the delinquent list shall not affect the validity of the assessment and levy of taxes, nor the sale by which the collection may be enforced, nor the lien of the state on such delinquent real estate for the taxes unpaid."

There is no expression in the revenue statutes that recognizes a lien for taxes in favor of a county. While the law has selected a county officer to look after and collect the state and county taxes, to wit, the county treasurer, it has chosen to have him act in doing so as the agent of the state. He is required before he enters upon his duties as the collector to execute to the

state a bond in such penal sum as fixed by the board of supervisors. Sec. 3111, Rev. Code 1928. When the treasurer has offered any real property for sale to satisfy the taxes against it and receives no offer, it is made

"his duty to strike off to the state of Arizona the property remaining unsold for the amount of such taxes, interest, penalties, and charges, and shall issue to the state of Arizona a certificate of purchase as provided in other cases." Sec. 20, chap. 103, *supra*.

The certificate of purchase issued to the state is in lieu of or a continuance in another form of the state's tax lien. The county treasurer is authorized to sell and transfer the state's certificate to any purchaser who will pay all the taxes, etc. (sec. 31, Id.), and thereafter to issue to such purchaser a deed to the property on his compliance with the law as to notice, etc. Sec. 49, Id.

It seems to us that before the court could adjudicate the state's right to a lien or the validity of the certificates of purchase of the lots, it would have to have the state before it as a party. The statute providing the remedy for quieting one's title to real property states that the remedy may be invoked against "any person, or the state of Arizona, when such person or the state claims any estate or interest, adverse to the party bringing the action." Sec. 4356, Revised Code of 1928. The state, and not the county, if there is no redemption from the taxes as provided in sections 42, 43, 44 and 45, chapter 103, *supra,* becomes the owner. It is quite clear that the action against Maricopa county and others, *supra,* to quiet title did not involve the state's interests in the lots, and the judgment therein does not estop the state or its assignee from asserting the validity of the certificates of purchase or the state's tax lien.

 It is next contended by plaintiff that the description of the lots on the tax roll and in the proceedings thereafter to collect the delinquent taxes was wholly insufficient to deprive plaintiff of his right of redemption. The description appears on the tax roll as "the following premises, situate in the County of Maricopa, State of Arizona, to wit, East Evergreen, Lot 6, Block 14." Lot 7 has the same description. These descriptions were used in all subsequent proceedings up to and including the deed from the state to Hughes. It seems to be agreed that the description standing alone is insufficient. The defendant contends, however, that it is sufficient to allow the introduction of evidence to show that these two lots are the only two lots of the number and description in Maricopa county. The plaintiff takes that opposite position and insists that the description is so defective as not to permit extrinsic evidence to identify the lots. The trial court accepted defendant's contention as correct and took evidence in support of the description. The evidence was to the effect that there was only one East Evergreen in Maricopa county; that a map or plat thereof was on file in the office of the county recorder of such county and that on such map or plat there were lots numbered 6 and 7 in block 14. Such map shows that East Evergreen was quite a good-sized piece of land that had been subdivided into blocks and lots. The question is could the plaintiff from such description readily identify the property as his lots 6 and 7, block 14, in East Evergreen Addition to the city of Phoenix? Cooley on Taxation, third edition, page 740, says:

"In listing the land (for taxation) it must be described with particularity sufficient to afford the owner the means of identification, and not to mislead him." See, also, *Mountain Club* v. *Pinney*, 67 Cal. App. 225, 227 Pac. 630. After and before plaintiff acquired title to the lots they were listed for state and county taxes

314

as indicated. As such owner he was charged with notice of how his property was described in the assessments. It was under such description on the tax roll that Maricopa county claimed a lien on the lots in its answer to his action to quiet title. It seems to us the court's finding, that the description of the lots in the proceedings to collect the delinquent taxes was sufficient to afford plaintiff the means easily to identify such lots, is well supported both by the law and the evidence.

 The law (chap. 103, Laws of 1931) makes it the duty of the county treasurer to collect state and county delinquent taxes and to execute all necessary papers required by the law in the performance of such duties. The certificates of purchase of the lots issued to the state were signed by a deputy treasurer instead of his principal and this, plaintiff claims, is not permitted. Section 60, Revised Code of 1928, authorizes a deputy "unless otherwise provided . . . [to] perform the duties attached by law to the office of the principal." The delinquent tax statutes do not require the treasurer personally to sign or execute any papers or instruments issued by him in proceedings thereunder.

 The fourth ground upon which plaintiff urges the invalidity of tax sales of lots to the state for delinquencies for 1927–1930, inclusive, is that the advertisement of the sales was not made as required by the law. Section 18, chapter 103, *supra,* makes it the duty of the county treasurer to prepare a list of all delinquent real property and to accompany it with a notice that each tract, or so much thereof as is necessary, will, on a day certain and on succeeding days, be sold at public auction at the treasurer's office for the taxes, etc., a copy of which notice is required to be sent by mail to the owner of each tract to be sold, if the owner be known. In addition, the treasurer is required to

cause the list and notice to be posted and published in the official paper of the county. It is insisted by plaintiff that the statute requires the county treasurer to publish all the delinquent property at the same time, and it is admitted that he divided the list and published a part thereof at one time and the rest at a later time or times and named in the notices a different day when sales would commence. The fact is lots 6 and 7, block 14, East Evergreen, were in the first list published and, if it should be held that all delinquent tracts should have been published in that list, only those property owners whose property was omitted therefrom could have complained. If the offer of lots 6 and 7 for sale for delinquent taxes was properly publicized, the owner thereof could not be injured because some of the property was not so advertised with his, and the same is true in reference to the time of the commencement of the sale. While we agree with plaintiff that the law seems to require that all the property in the delinquent list shall be published and posted for sale at one and the same time, and that all of the property therein shall be offered for sale on the same commencement date, we cannot see how he was injured because some of the property was omitted therefrom. Besides, the owner was notified by mail, as required by the statute. The notice, of course, is largely for the protection of the owner. See 61 Corpus Juris, pages 1180 and 1181, sections 1593 and 1594. We quote from the last section:

"The purpose of the advertisement of a tax sale is to warn the owners and to apprise prospective purchasers of the property for sale, and hence statutes requiring notice by publication are regarded as mandatory, and a sale will not be valid unless their provisions are fully or substantially complied with. Although it has been held that since a taxpayer is bound to know whether or not he has paid his taxes, the omission of his property from a list of property to be sold at a

general delinquent tax sale is not fatal, he having notice of the time and place of sale, notwithstanding the statute requires the separate tracts to be listed. . . . ''

 The next objection is to the conduct of the sale by the county treasurer. Section 18, *supra,* requires that the property shall be noticed by the county treasurer for sale and ''sold by him at public auction at the county treasurer's office.'' Section 20, Id., further states how the officer shall conduct the sale. The material part thereof reads:

''The day designated in said list and notice shall not be earlier than the first day of October, nor later than the first day of November, and on said day the county treasurer shall commence the sale of all real property described in such list and notice on which the taxes and charges have not been paid, and shall continue the sale from day to day, Sundays and holidays excluded, until each parcel, or so much thereof as is necessary to pay the taxes and charges thereon, has been sold. If there be no bid for any tract offered, the county treasurer shall pass it over for the time, and shall reoffer it at the beginning of the sale on the next day, until all the tracts are sold, or until the county treasurer becomes satisfied that no more sales can be effected, when it shall be his duty to strike off to the state of Arizona the property remaining unsold for the amount of such taxes, interest, penalties, and charges, and shall issue to the state of Arizona a certificate of purchase as provided in other cases. . . . ''

''The day designated'' in the notice of sale upon which the county treasurer would commence to sell the advertised property was October 7, 1931. The evidence shows that on said date the county treasurer was in his office ready to transact any business in connection with the collection of the taxes; that he and his deputies, if any person inquired concerning any property or lot on which the taxes had not been paid, would wait on such person and inform him of the amount of the taxes, charges and penalties and if such person

was willing to pay all such taxes, charges and penalties and accept the lowest rate of interest on such amount from the redemptioner, the property was sold to him; that this manner of conducting sales was carried on over a period of six months or more from the commencement day of sales and if no offer during that time had been made from private parties or individuals the property was struck off to the state. There was no public offering or public auction in the treasurer's office or in front of the court house on October 7th or any subsequent date and no record kept of any continuances of the sales from October 7th or any subsequent date.

The plaintiff contends that what was done by the county treasurer in the conduct of the sale was not a compliance with the provisions of the statute. He says the sales were private and not public and that there was no competition between bidders nor any opportunity to compete. He also insists that after the offer by the treasurer to sell on the first day, a reoffer to sell property not sold on that day should have been adjourned to a definite date and a record thereof kept. We cannot agree with this view of the law. The sale's notice to the public provided for in section 18, *supra,* is that the treasurer will offer for sale

"at the office of the treasurer of —— county, Arizona, on the —— day of —— 193—, and on succeeding days, so much of the following described real property, upon which there are delinquent taxes, as shall be deemed necessary to pay the taxes hereinbelow set down, together with interest, penalties and charges thereon."

This section and other sections of chapter 103, *supra,* show that the sale is not to be competitive. The statute nowhere authorizes a sale of property for more than its taxes, interest, penalties and charges. Section 23, which requires the treasurer to make a record

of sales of real property for taxes, designates items five and six as follows:

"(5) total amount of taxes, interest, penalties and charges for which the same was sold; (6) the amount of subsequent taxes paid by the purchaser;"

Section 25 reads:

"When any real property is offered for sale for delinquent taxes as herein provided, it shall be sold to the person who shall pay therefor the whole amount of taxes, interest, penalties and charges then due thereon, and who in addition shall offer to accept the lowest rate of interest upon the amount so paid in order to redeem from such sale, which said rate of interest shall never exceed fifteen per cent per annum from the date of such sale until redeemed; provided, that when any real property shall be sold to the state for taxes the rate of interest payable on redemption shall in all cases be ten per cent per annum."

The only competition possible under the law is in the matter of the rate of interest the owner might be required to pay to redeem his property. Since there was no offer by anyone to pay the taxes, etc., and take the property, the treasurer struck it off to the state, and when such happens the interest rate is fixed at ten per cent.

Since the manifest purpose of the law is to limit the purchase price of delinquent property to the amount of the taxes, interest, penalties and charges, we can see no reason why the treasurer should proclaim in his office, or in front thereof, on the commencement day of sales, or any other day, that he will sell at public auction the listed and advertised property for delinquent taxes. Every taxpayer whose property is delinquent is supposed to know that it will be sold for the taxes, etc., on the date advertised or some succeeding date, and that whether it is bought in by a private individual or by the state the amount to redeem will be the same except as to the item of interest. It seems that for

several years last past there has been a very large list of delinquent taxpayers in this county—from three to four thousand or perhaps more. If the county treasurer should be required to offer each piece of delinquent realty separately at public auction and in default of any offer make a record of the time when the same would be re-offered, it would greatly increase the expenses of his office without in any way aiding the delinquent taxpayer. It would convert his office into a public auction house, whereas it is meant to be a place where citizens of the county may go to examine the tax records and pay their taxes.

We find no reason, equitable or legal, that should require this court to recognize plaintiff's right to the property as superior to that of the defendant Hughes. Plaintiff knew, or by the examination of the tax records of the county could have learned, in 1935 when he bought the lots from the city of Phoenix, that there were delinquent taxes against them. In his action brought in 1936 to quiet his title to the lots he learned the lots had been sold to the state for taxes for the years 1927–1930 inclusive and that no taxes had been paid for the years 1931–1936 inclusive, and he also knew that if he would protect his ownership of the lots he should redeem from the sale made to the state in 1932 and also pay subsequent taxes (sec. 37, Id.), and he took no steps to save the property by liquidating the taxes against it. The defendant bought the certificates of purchase from the state and paid all the taxes, interest, penalties and charges. After the expiration of five years from the date of sale to the state, no one offering to redeem, defendant Hughes, as assignee thereof, demanded of the treasurer a deed of the property and the treasurer published a notice in the official county newspaper of such application as required by law and the end thereof, in accordance

with the notice, issued to defendant a treasurer's deed. Secs. 49, 50, 51, Id.

We think all the steps taken by the treasurer in the sale of the lots were substantially in compliance with the law and that the defendant obtained a good title to the property, free from any equities in favor of plaintiff, and we therefore affirm the judgment.

LOCKWOOD and McALISTER, JJ., concur.