[Civil No. 4548.   Filed July 6, 1943.]

[139 Pac. (2d) 451.]

THE COUNTY OF PINAL, State of Arizona, and
ENIS THURMAN, W. C. SMITH and J. W.
SPRAY, Constituting the Board of Supervisors of
the County of Pinal, State of Arizona, Appellants,
v. K. POMEROY, Appellee.

Mr. W. C. Truman, County Attorney, Mr. Ronald J. Ellis, Deputy County Attorney and Mr. Chas. H. Reed, Special Attorney for Pinal County, for Appellants.

Mr. D. V. Mulhern and Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellee.

ROSS, J.—The question we have to decide is whether the appellants or the appellee should have a tax deed, under delinquent tax proceedings, of the following described real property:

Lone Wedge, Palace, Picket Post, Tuna, Watson and Gerald Cancler patented lode mining claims, situated in the Pioneer Mining District, in Sections 25 and 26, Township 1 South, Range 12 East of the Gila and Salt River Meridian, County of Pinal, State of Arizona.

The appellants, representing the State of Arizona, claim that the state under the facts is the owner of the property, having bought the same at a delinquent tax sale, whereas appellee claims that he is an as-

signee of the state's certificate of purchase at such sale and is entitled to the tax deed.

There is no question of the validity or legality of the proceedings of the taxing officers in assessing and levying the taxes. The controversy grows out of the effort of the taxing authorities to collect the taxes and the regularity of the steps taken to that end, and especially the legal effect of the action of the County Treasurer of Pinal County in attempting to sell the property for delinquent taxes when it had already been sold and deeded by her to the state for such delinquent taxes. Both parties deraign title from the state and the same tax proceeding.

The County Treasurer of Pinal County, acting in behalf of the state, on October 31, 1932, as provided in section 73–806, Arizona Code 1939, struck off said property to the State of Arizona for delinquent taxes and thereafter issued to the state Certificate of Purchase No. 115 covering said property.

There was no redemption from such tax sale and more than five years to wit, seven years, having elapsed since the property was sold to the state for delinquent taxes, the county treasurer advertised, as provided in section 73–835, in two issues of the official paper of said county, on November 10 and 17, 1939, that the state had applied for a Treasurer's Deed of the property and that if redemption according to law be not made before December 12, 1939, she would convey said property to such applicant or its assigns. No redemption having been made within such time, on December 21, 1939, she duly executed a Treasurer's Deed of the property to the state, which was on the 12th day of January, 1940, recorded in the office of the County Recorder of Pinal County.

Notwithstanding, on January 6, 1940, or 16 days after deeding the property to the state, the said treasurer accepted from appellee a tender of the whole

amount due under the certificate of purchase and made a record thereof on such certificate in the following words:

"No. 115

"TREASURER'S CERTIFICATE OF PURCHASE

"County of Pinal,

"State of Arizona.

"For the tax of 1927 to 1931, incl.

"TREASURER'S ASSIGNMENT.

"Date Jan. 6, 1940

"For and in consideration of the sum of $775.84 the receipt of which is hereby acknowledged, and in conformity with an order of —— made and entered of record on the 6th day of Jan., 1940, I, Ruth J. Branaman, Treasurer of the County of Pinal, State of Arizona, do hereby sell and assign the within Certificate of Purchase No. 115, and all the rights, title and interest of the County of Pinal, in and to said property by virtue thereof to K. Pomeroy without recourse on the County of Pinal in any event.

"RUTH J. BRANAMAN
"Treasurer."

At the same time the treasurer was tendered or paid by appellee all subsequent taxes, penalties, etc.

January 11, 1940, said treasurer informed appellee that she had overlooked the fact of the execution of a deed on December 21, 1939, conveying the property to the state, and advised him she was holding the money received from him and would refund same upon his return of the Treasurer's Certificate of Purchase and the Assignment thereof.

It is stipulated appellee had no *actual* knowledge that the county treasurer had given a deed to the state, or of any of the steps preliminary thereto, until so advised by said treasurer on January 11, 1940, but, on January 6, 1940, "was informed by the Treasurer of Pinal County that the same (certificate of purchase) was available for assignment."

After said property was deeded to the state, the Board of Supervisors of Pinal County, pursuant to sections 73–838 and 73–839, prepared a list of property in such county belonging to the state, including therein said patented mining claims, and also prepared a notice that said property would be sold at private sale, on February 5, 1940, to the highest bidder for cash, etc.

This action was brought by Pomeroy to enjoin such sale and to have the deed from the County Treasurer of Pinal County to the State of Arizona, dated December 21, 1939, adjudged invalid and the Certificate of Purchase No. 115 and the Assignment thereof to appellee valid and in full force.

Upon the above state of facts the trial court, on November 10, 1941, found the issues in favor of the defendants and entered judgment accordingly. Thereafter, upon a motion to set aside the judgment and for a new trial, the court, on February 20, 1942, vacated the judgment and rendered another one, which was in favor of plaintiff canceling the deed to the state and holding that the certificate of purchase and the assignment thereof to K. Pomeroy were valid and in full force and effect. The court also permanently enjoined the defendants County of Pinal and Board of Supervisors from selling, or offering for sale, the real property or any part thereof.

The defendants have appealed from such judgment.

■ The foregoing is, we think, a full and fair statement of the facts found in the record. It only remains to apply the law to those facts. The tax laws of the state impose upon the county treasurer the duty of collecting delinquent taxes in his county. If the taxes are not paid it is made his duty to take the steps the laws prescribe to collect them. If in the performance of that duty it becomes necessary that he bid in the delinquent property for the taxes he does so for the

state, taking a certificate of purchase in the name of. the state. By section 73–817 the county treasurer is authorized to sell and assign such certificate to any person who shall pay the amount due under the certificate, including interest, penalties and charges, and who shall in addition pay subsequent taxes on the property, including fifty cents for making each assignment. This section is authority to the county treasurer to sell and assign the certificate of purchase as long, and no longer, as it has not been disposed of by him in securing title to the property for the state. The certificate is evidence of the holder's right, whether it be the state or any person, to a deed at the end of three years, section 73–831, or five years, section 73–835, depending upon the election of the holder thereof.

The facts show the state as the owner and holder of the certificate took the course of action prescribed by section 73–835 *et seq.* to close out the matter, and in doing so surrendered its claim of lien for taxes, as evidenced by the certificate, for a deed of the property. So, when on December 21, 1939, the county treasurer executed a deed of the property to the state the certificate became *functus officio.* Granting that the attempt by her on January 6, 1940, to sell and assign the certificate to Pomeroy was in all respects as represented, it was taken without any legal right and against the law. It is clear the certificate, after the deed was executed, was only a link in the chain of the state's title. Quoting from appellants' brief:

"We have a situation where a conveyance to the state, duly and legally made by a public officer with full authority to vest title to the property in the state, is attempted to be defeated by one who claims to have acquired an interest in such property through an instrument executed by such public official subsequent to the conveyance to the state."

As indicated, we do not think the assignee of the certificate of purchase, after it had been exchanged for a deed to the premises, obtained any right to the property as against the grantee in the deed.

█ The assignment of the certificate of purchase dated January 6, 1940 is of "all the rights, title and interest of the County of Pinal, in and to said property . . . to K. Pomeroy without recourse on the County of Pinal in any event." Pinal County had no assignable interest in the property. *Conway* v. *Mosher,* 55 Ariz. 307, 101 Pac. (2d) 209. At the delinquent tax sale the property was struck off to the state and the certificate of purchase was issued in the name of the state, as the law provides. Another thing, this assignment does not pretend to dispose of the state's interest in the certificate, the only interest that was assignable. The assignment was "without recourse." The law provides that such certificate "shall be assignable by endorsement." Section 73–815. The wording and contents of this assignment are such as to cause one to wonder if the parties did not understand the full situation and were trying to get around it.

Appellee meets this conclusion by invoking the recordation statutes. He says the deed to the state was not recorded until January 12, 1940. As early as November 1, 1937, or thereabouts, he inquired of the county treasurer whether the certificate of purchase was available for assignment to him and was informed that it was. To his inquiry of about November 1, 1939 such officer informed him the certificate was still available for assignment. From these statements it is apparent that appellee kept a close lookout and was well informed as to the tax delinquency situation.

█ █ In November, 1937, the state was entitled to a deed of the property on account of the delinquency sale in October, 1932, more than five years having

elapsed. The recording statutes, sections 71–414 and 71–423, relied upon by appellee, are for the protection of persons dealing in real property "without notice."

▮ The state, in taking title to the property for the nonpayment of the taxes, acted solely in aid of the taxing authorities in collecting taxes against the property and for that purpose took the title to the property in its governmental capacity, and not as proprietor. *Christmas Copper Corp.* v. *Kennedy*, 58 Ariz. 216, 118 Pac. (2d) 1110. As is said in *Longview* v. *Cowlitz County*, 1 Wash. 2d 64, 95 Pac. (2d) 376, 379:

" . . . when the county becomes the purchaser of land at a general tax foreclosure sale for want of other bidders, the county, upon the deed being issued to it pursuant to such sale, acquires title to such property in fee, as against the owner. However, the title thereby acquired becomes vested in the county, not in its proprietary capacity, but in trust for the state and for the other taxing municipalities within which the land is situated, with power and obligation on the part of the county to sell the land and fairly apportion the proceeds to the state, municipal, and other funds entitled thereto. . . . "

▮ See also, *Bennett* v. *Grays Harbor County*, 15 Wash. 2d 331, 130 Pac. (2d) 1041. Under our law the title to land sold for taxes vests in the state instead of the county, otherwise the rule is the same here as in Washington.

▮ We have held that persons dealing with public officers are bound, at their peril, to know the extent and limits of their power and that no right can be acquired except that predicated upon authorized acts of such officers. *Weidler* v. *Arizona Power Co.*, 39 Ariz. 390, 7 Pac. (2d) 241; *Bank of Lowell* v. *Cox*, 35 Ariz. 403, 279 Pac. 257.

▮ It is next claimed that because the county treasurer failed to comply with sections 73–809 and 73–810 and make the records therein provided, the state's

title to the property failed and appellee should prevail. The first of these two sections provides that the county treasurer shall make a correct record for his office of all sales of real property for taxes and enumerates what the record shall contain. The second section makes it the duty of such treasurer to make a certified copy of such record, *immediately on completion,* in a well-bound book and deposit same in the office of the county recorder.

These records, especially the one required by section 73–809, are minutes of occurrences during the progress of the state's action in collecting the delinquent taxes due it. Such records cannot be completed until "all sales of real property for taxes" for the period advertised have been made and the "name of person to whom conveyed and date of deed" have been entered of record. The record required by section 73–810 to be deposited with the county recorder is made from the record provided for in the preceding section, but it is not to be made until "immediately on completion" of such record. The history of the case would cover a period from some time in October, 1932, when the property was sold for taxes, to January 12, 1940, when the deed to the state was filed for record. It is not conceivable that the legislature by such legislation intended that each transaction or step in collecting the delinquent taxes should be recorded "in a well-bound book" section 73–809, and to so construe it would cause large and unnecessary expenditures. As was said by appellants' counsel:

" . . . a sensible interpretation of the above sections is that the legislature had in mind that the county treasurer should keep in his office a bound book with reference to the tax sales for each year and that there should be entered in such book from time to time the information required regarding the parcels sold at such sale and that after the record for a particular year's sale is complete in such book the treasurer shall

immediately make and certify a copy of the completed book and deliver the same to the county recorder. There is no showing made in the present case that the tax sale book for the year 1932 has been completed."

For the foregoing reasons, the judgment of the lower court is reversed and the cause remanded with directions that judgment be entered for the appellants, with costs in both the superior court and in this court.

McALISTER, C. J., and STANFORD, J., concur.