IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

AUG 23 2007

COURT OF APPEALS
DIVISION TWO

KAMAN AEROSPACE )
CORPORATION, a Delaware )           2 CA-CV 2006-0177
corporation, )                      DEPARTMENT A
 )
          Plaintiff/Counterdefendant/ )   O P I N I O N
          Appellee/Cross-Appellant, )
 )
                    v. )
 )
THE ARIZONA BOARD OF REGENTS, )
UNIVERSITY OF ARIZONA, )
a political subdivision of the State of )
Arizona, )
 )
          Defendant/Counterclaimant/ )
          Appellant/Cross-Appellee. )
 )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20045114

Honorable Carmine Cornelio, Judge

REVERSED IN PART, AFFIRMED IN PART

Fennemore Craig, P.C.
  By George O. Krauja and Erwin D. Kratz
Tucson
Attorneys for
Plaintiff/Counterdefendant/
Appellee/Cross-Appellant


Lewis and Roca LLP
  By Brian J. Pollock, Lawrence A. Kasten,
  and Dale A. Danneman
Phoenix
Attorneys for
Defendant/Counterclaimant/
Appellant/Cross-Appellee

---

B R A M M E R, Judge.

¶1        The Arizona Board of Regents (ABOR)[1] appeals from a judgment entered after a jury rendered its verdict in favor of Kaman Aerospace Corporation (Kaman) on ABOR's counterclaim for breach of contract and Kaman's breach of contract claim, awarding Kaman $0. ABOR asserts the trial court erred when it denied ABOR's motions for judgment as a matter of law on Kaman's claim because there was no written agreement obligating it to compensate Kaman for additional work and because Kaman had failed to prove an authorized signatory had executed contract modifications on ABOR's behalf. ABOR contends that Kaman failed to prove the damages element of its claim and failed to establish that ABOR's breach was material. ABOR also argues Kaman's breach of contract claim was untimely and that the trial court erred in denying ABOR's motions for a new trial on that claim and on the

---

[1]At trial and on appeal, the parties and the trial court use the term "the University" interchangeably with "ABOR."

2

jury's verdict in Kaman's favor on ABOR's counterclaim for damages. Kaman cross-appeals, asserting the court erred by not awarding it attorney fees as the prevailing party at trial.

**Factual and Procedural Background**

¶2        We view "the evidence in a light most favorable to upholding the jury verdict[s]." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, ¶ 13, 961 P.2d 449, 451 (1998). ABOR is the governing body of the University of Arizona; the astronomy department of the University "has a research wing called Steward Observatory." The observatory has a mirror laboratory, "a unique facility in the world," that makes large mirrors with "unique properties" to exacting specifications. In March 2003, ABOR entered into a fixed price contract with Lockheed Martin, effective September 2001, for ABOR to "[d]esign, develop, fabricate, assemble, test, deliver, and support integration of a 6.5 [meter] class Collimator" for approximately $32 million. A collimator was described at trial as "a telescope operating in reverse"; it would be used to test the accuracy of space telescopes while they were still on earth.

¶3        The mirror laboratory's manager testified "the scope of the project was larger than the observatory could handle alone during the time that Lockheed . . . wanted delivery." Accordingly, ABOR decided to partner with Kaman. ABOR was to provide the mirrors, and Kaman would be responsible for providing support and control components of the collimator.

3

**¶4** Kaman and ABOR entered into a written contract on December 20, 2001. It listed a "Firm Fixed Price" of $9,083,269 for the components Kaman was to provide. The contract contained a statement of work (SOW)[2], which described various tasks Kaman was expected to perform, and identified certain "billing milestones" when Kaman was to be compensated for completing various tasks from March 2002 to May 2006. The SOW listed three documents that provided its basis.

**¶5** Paragraph four of the contract stated the "proposal reflects a fixed price for the effort proposed. In the event that there is a modification to the work scope, a modified level of effort will be indicated in a revised scope of work to be agreed upon by the parties at the time of modification." Part of paragraph two of the "terms and conditions of sale" attached to the contract stated, "[a]fter acceptance by [Kaman] any change of specification/drawings manufacturing process delivery schedule and/or quantity may be made only with [Kaman's] written consent and at a charge which [Kaman] shall determine reasonably sufficient to cover its additional costs."

**¶6** Eleven modifications were entered into by the parties. Relevant here are modifications two and four. Modification two, dated May 31, 2002, provided a new SOW, now based on six documents, including the original three and "design guidelines" from the University.

---

[2]ABOR asserts, and Kaman does not dispute, that the "Statement of Work" describes the "work scope," a term that is used in other parts of the contract.

4

¶7 Modification number four, dated August 16, 2002, increased the total value of the contract to $12,800,000. This modification included a new "terms and conditions of sale," with a revised paragraph two, that stated in part, "After acceptance by [Kaman] any change of specification/drawings manufacturing process delivery schedule and/or quantity may be made only with both parties' written agreement and at a charge which [Kaman] and [ABOR] shall determine reasonably sufficient to cover any additional costs."

¶8 Mark Yokley, the program manager for Kaman, testified that when the parties agreed to the May 2002 SOW, there were ten design guidelines in existence that formed the basis of 222 requirements. Nearly two years later, when Kaman presented its claim to ABOR, Yokley stated there had been forty-six revisions or additions to the design guidelines leading to a total of seventeen design guidelines and 472 requirements, although only sixty-three of the requirements were "really new." Yokley testified twenty-three of the requirements were more difficult to perform.

¶9 On December 18, 2003, Kaman gave ABOR a "very preliminary, rough" estimate of what it claimed were additional costs in its "new scope and new/changed requirements list." This proposal listed twenty-eight "new requirement description[s]" and an explanation for each charge, with a "total estimated price impact" of $3,821,400. In January 2004, ABOR wrote a letter to Kaman, rejecting most of Kaman's claims and stating that "most derive from a failure by Kaman to perform to the statement of work and teaming agreement." Twenty-five of the twenty-eight claims were rejected with supporting rationale,

5

two were accepted "pending a full cost proposal," and one was accepted and a new contract was formed with respect to this item, a "dual-use collimator support structure study."

¶10 Kaman then assembled a claim, presenting it to ABOR on April 5, 2004. This claim listed twenty-nine separate items at a cost totalling approximately $6.25 million. Three of the claims were accepted by ABOR "pending cost evaluation" with a fourth, the support structure study, having already been accepted. The rest of the claims were rejected by ABOR. In July 2004, Kaman filed a notice of claim through counsel pursuant to A.R.S. § 12-821.01 as to ABOR, stating its "claim can be settled for $6,250,110."

¶11 Kaman stopped work on September 17, 2004, and sued ABOR, alleging that "[a]fter the parties agreed to the SOW, [ABOR] changed, increased and added new work scope and work effort requirements," and failed to compensate Kaman for the increased work. Kaman's complaint included counts of breach of contract, negligent misrepresentation, unjust enrichment, and quantum meruit.[3] ABOR filed a counterclaim in which it alleged Kaman had breached the subcontract by failing to fulfill its obligations and by abandoning performance. At the time Kaman sued, ABOR had paid Kaman approximately $9.3 million of the $12.8 million contract.

---

[3]In December 2004, the trial court granted ABOR's motions to dismiss Kaman's quantum meruit and unjust enrichment claims, and it granted ABOR's motion for summary judgment on Kaman's negligent misrepresentation claim in February 2006. Kaman does not challenge these rulings.

6

¶12    ABOR also filed a request for a provisional remedy of partial specific performance or for replevin simultaneously with filing its counterclaim. The court granted the request for replevin upon ABOR's posting of a $4 million bond. ABOR also gave Kaman an additional $1.1 million for parts and materials not covered by the replevin order.

¶13    ABOR filed a motion for summary judgment in October 2005, arguing the contract between the parties required a written modification and none had been made; any purported oral modification of the contract was impermissible under its terms; and, the ABOR employees that Kaman argued had modified the contract lacked the authority to enter into contracts on behalf of ABOR. Kaman responded that the changes to the design guidelines changed the work it was required to perform, and that the contract between the parties required ABOR to compensate Kaman for this additional work. The court denied ABOR's motion, stating, "a jury could find that since the SOW is based partly on the design guidelines, a significant change to the design guidelines changes Kaman's level of effort, thus triggering either Paragraph 2 of the revised Terms and Conditions or Paragraph 4 of the contract, which calls for modification of Scope of Work." It also found that whether the design guidelines were specifications was a factual issue for the jury.

¶14    ABOR filed a second motion for summary judgment in December 2005, arguing that, during the negotiations as to modification two, "Kaman agreed to drop its demand that it could be paid extra for changes to Applicable Documents. . . . [and therefore] Kaman cannot now claim that a modification to [the design guidelines that are a part of the]

7

Applicable Documents could entitle it to extra payments." The court rejected this argument as well, stating that even with this new information, a jury could conclude that "although the University chose to enact changes by characterizing them as revisions to the Design Guidelines, it did not mean that . . . they did not cause significant changes to Kaman's work as specifications."

¶15 At the close of Kaman's case, ABOR again moved for judgment, which the trial court denied. After the verdict, ABOR renewed its motion and moved for a new trial, both of which the court denied. This appeal followed.

**Discussion**

Denial of Judgment as a Matter of Law - Kaman's Breach of Contract Claim

¶16 ABOR contends the trial court erred in denying its motions for judgment as a matter of law and by allowing the jury to interpret the contract. We review de novo a trial court's ruling on a motion for judgment as a matter of law. *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, ¶ 6, 995 P.2d 735, 738 (App. 1999). Such a "motion should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶17 ABOR asserts Kaman's breach of contract claim must fail because "only a designated contracting officer of the State can bind the University." It states, "Kaman has

8

never alleged (and cannot allege) that any officially designated contracting officer ever assented to any agreement, written or otherwise, to pay Kaman more than the fixed price." ABOR contends that, even if changes to the design guidelines could constitute a written agreement, ABOR need not pay for those changes, reasoning that "[n]o University contracting officer was ever involved in (let alone signed) the Design Guidelines [as they] were promulgated by the Steward engineers on the job site."

¶18        As stated above, the trial court denied several motions ABOR made for judgment as a matter of law on this issue.  At trial during closing arguments, Kaman's counsel stated:

> Kaman is not saying that when these program people agreed on technical requirements, technical changes, that a price increase was automatically agreed to, automatically created.  But we are saying that when technical changes were made [it] beg[a]n a process that should have resulted in a contracts person ultimately agreeing on a contract modification.

The trial court instructed the jury that, "[o]nly personnel with authority to enter into contracts on behalf of the University of Arizona can bind the University to contractual promises.  That is, the University of Arizona cannot be held liable for breaching any contractual promise agreed to by unauthorized personnel."

¶19        ABOR Policy Number 3-103(A) states that "University officers designated by the president of the university, as certified to the Executive Director, are authorized to execute contracts and other written instruments on behalf of the Board."  Pursuant to this policy, a July 2001 designation by the University's president certified nine officers "as

9

authorized signatories to execute contracts and other written instruments on behalf of The University of Arizona and [ABOR]." Two officers so designated were the Director and Sponsored Contract Officer of the Office of Research and Contract Analysis, positions that were held by Richard Haney and Lee Anne Peters, respectively. The contract between Kaman and ABOR was signed by Peters on behalf of ABOR, and all eleven modifications were signed by either her or Haney. The changes to the design guidelines were not signed by any University official with contracting authority.[4]

¶20         ABOR contends that the state "can never be bound by unauthorized acts of its employees," a statement that Kaman does not dispute. ABOR is a state agency. *City of Tempe v. Ariz. Bd. of Regents*, 11 Ariz. App. 24, 25, 461 P.2d 503, 504 (1969). Arizona law is clear that "persons dealing with public officers are bound, at their peril, to know the extent and limits of their power and that no right can be acquired except that predicated upon authorized acts of such officers." *Pinal County v. Pomeroy*, 60 Ariz. 448, 455, 139 P.2d 451, 454-55 (1943); *Bigler v. Graham County*, 128 Ariz. 474, 477, 626 P.2d 1106, 1109 (App. 1981) (same). Other jurisdictions have reached similar conclusions. *See, e.g.*, *Kondos v. W. Va. Bd. of Regents*, 318 F. Supp. 394, 397 (S.D. W. Va. 1970) ("[I]t has long been firmly established in West Virginia that the state may not be held liable for illegal or unauthorized acts of its officers."); *People ex rel. Dunbar v. Dist. Court In and For Chaffee County*, 255

---

[4]Most were not signed at all, although some included Steward engineers' typewritten names and some were dated.

P.2d 743, 748 (Colo. 1953) ("'The state can act only by its agents, duly authorized by law; and since public officers cannot bind the government they represent by acts outside their express authority, even though within their apparent powers, it is only where officers of the state perform their acts agreeably to the authority delegated them that the state is bound.'"), *quoting State ex rel. Caton v. Indus. Comm'n*, 61 N.E.2d 806, 807 (Ohio Ct. App. 1945). And the United States Supreme Court has stated, "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S. Ct. 1, 3 (1947).[5]

¶21        Kaman responds that

> [t]he parties' conduct throughout the course of performing the contract shows neither side contemplated changes to the written Design Guidelines would require a written contract modification, or would need to be signed by someone in the University contract administration office—such Design Guidelines changes were left to . . . the technical program personnel.

However, Kaman sought an additional six million dollars for work it thought it had performed or would need to perform outside of the SOW. If it wanted to be compensated for the work, it needed to have had someone with authority to bind ABOR sign a new contract

---

[5]Kaman does not argue that these principles were altered because ABOR may have been acting in a proprietary, rather than governmental, capacity. Consequently, we do not consider this issue.

11

or modification. For example, when the parties entered into modification number four, which increased the value of the contract by nearly $4 million dollars, Peters signed the agreement, binding ABOR.

¶22       Kaman relies on a single case in its response to ABOR's argument, *Godbey v. Roosevelt School Dist. No. 66 of Maricopa County*, 131 Ariz. 13, 21, 638 P.2d 235, 243 (App. 1981), for the proposition that "the acts of the parties under the contract, before disputes arise, are the best evidence of the meaning of doubtful contractual terms." It also argues "[t]he University's conduct proves the parties['] intent when they made the contract."[6]

¶23       But conduct of the parties is not relevant if no authorized official bound ABOR to pay for the work. In a similar factual circumstance in the context of sovereign immunity, the Maryland Court of Special Appeals rejected an argument that a governmental entity's course of conduct had modified a written contract and had bound the state, even if that course of conduct was identical to the parties' intent at the time of entering into the contract. *Dep't of Pub. Safety & Corr. Servs. v. ARA Health Servs., Inc. (ARA I)*, 668 A.2d 960 (Md. Ct. Spec. App. 1995). The Maryland Court of Appeals affirmed. *ARA Health Servs., Inc. v. Dep't of Pub. Safety & Corr. Servs. (ARA II)*, 685 A.2d 435 (Md. 1996).[7] There, ARA, a

---

[6]Because Kaman does not argue that ABOR, by later accepting claim twenty-seven and entering into a new contract, somehow ratified the conduct of the ABOR engineers, we do not address the issue.

[7]In that case, the Maryland Court of Appeals affirmed the Maryland Court of Special Appeals on the same basis and for the same reasons the lower court used to reach its conclusion. We have primarily relied on the intermediate appellate court's opinion because of the slightly more detailed factual summary it provides.

provider of health care services to prison inmates, sought reimbursement from the Department for the cost of Acquired Immune Deficiency Syndrome (AIDS) medication. *ARA I*, 668 A.2d at 962. ARA had entered into a contract with the Department, which had been approved as required by the Board of Public Works, to provide health care services to Maryland inmates. *Id*. at 963-64; *see also ARA II*, 685 A.2d 436-37. The contract also provided ARA was to receive additional compensation for AIDS medication delivered to all inmates who were hospitalized, but was not to get this excess compensation for medication dispensed in correctional facilities. *ARA I*, 668 A.2d at 963-64. A subsequent and retroactive modification approved by the Board, however, provided that the Department would reimburse ARA for all costs of AIDS medication no matter where the prisoners were located, but failed to account for an eighteen-month period starting from the beginning of the initial contract and ending on the effective date of the modification. *Id*. at 964; *see also ARA II*, 685 A.2d 437. Regardless, ARA had already been paid roughly $135,000 by the Department in compensation for the eighteen-month period. *ARA I*, 668 A.2d at 964.

¶24        State auditors objected to the payment and later withheld money in that amount, and an administrative agency rejected ARA's claim for reimbursement. *Id*. The trial court reversed, finding that although the contract was unambiguous on its face and would not entitle ARA to reimbursement for the eighteen-month period, by their course of conduct the parties had modified the contract. *Id*. at 964-65. The court relied on the Department's payments to ARA for the eighteen-month period and its attempt to defend its policy to the

13

auditors, even going so far as to state that it "had contemplated from the beginning that [it] would reimburse [ARA] for its expenses in providing AIDS medication . . . [and] that the $135,446.00 in disputed payments were in accord with the intent of the parties." *Id.*

¶25        On appeal, ARA contended that the parties had modified the contract by their conduct. *Id.* at 965. The Department argued, however, that ARA's claim was "barred by sovereign immunity because its officials who engaged in the conduct that allegedly modified its Contract . . . had no authority to do so."[8] *Id.* at 967. The appellate court looked at a number of Maryland statutes and regulations and found the Department lacked the authority to create the modification because the contract had not been subjected to the required approval procedures. *Id.* at 968. The court held that, "[i]n the absence of actual authority, the State may avoid the contract, regardless of the reasonableness of the beliefs of the other party." *Id.* at 969. As noted above, the Maryland Court of Appeals affirmed, stating, "The purported modification was not approved by the Board of Public Works, and thus exceeded the scope of the [Department's] authority. Furthermore, as between [ARA] and the public generally, [ARA] bears the risk of injury posed by the unauthorized conduct of a public agent." *ARA II*, 685 A.2d at 440.

---

[8]As the court in ARA I noted, Maryland law "provides that, in order to avoid the bar of sovereign immunity, a contract claim against the State must be based on a written contract executed by a State employee 'within the scope of [his or her] authority.'" *ARA I*, 668 A.2d at 967, *quoting* Md. Code Ann., State Gov't § 12-201.

14

¶26        *ARA I* is relevant for several reasons. Initially, it demonstrates that a course of conduct by unauthorized state officials cannot bind the state. This result obtains despite the evidence of the Department's unambiguous intent to compensate ARA for medication it provided during the eighteen-month period; indeed, the Department argued this intent to the state auditors. This case also shows that, absent approval by an authorized official, the state simply could not be required to compensate ARA, regardless of what the parties had intended. Similarly here, the Steward engineers could not bind ABOR in contract, even if, when they changed the design guidelines, they had intended ABOR would be bound to pay additional costs to Kaman.

¶27        Nothing in paragraph two of the terms and conditions changes this result. This paragraph provides: "After acceptance by [Kaman] any change of specification/drawings manufacturing process delivery schedule and/or quantity may be made only with both parties' written agreement and at a charge which [Kaman] and [ABOR] shall determine reasonably sufficient to cover any additional costs." Kaman argues this language bound ABOR to a process by which a Steward engineer would agree to a change to design guidelines, and at some later time an ABOR officer with contracting authority would evaluate and accept Kaman's claim for the work. Thus, under Kaman's interpretation, a design guideline change agreed to by engineers for the respective parties would bind ABOR to negotiate and agree on a reasonable price for the change.

¶28    However, Kaman's interpretation cannot overcome the fact that, until an ABOR officer with contracting authority executed a document embodying both the change and its cost, ABOR was not bound. Furthermore, although an ABOR official with contracting authority agreed to the language in paragraph two, we cannot conclude such a contractual provision could further delegate contracting authority to the engineers at the observatory. Any such delegation would be contrary to ABOR Policy Number 3-103(A), which only provides for the president to "delegate his/her authority to execute contracts . . . without certification to the Executive Director," and even the president can only delegate this authority for obligations under $10,000 and when it "does not unduly expose the Board or the university to financial loss." *See Clay v. Ariz. Interscholastic Ass'n, Inc.*, 161 Ariz. 474, 476, 779 P.2d 349, 351 (1989) ("[A]n [administrative] agency must follow its own rules and regulations; to do otherwise is unlawful."); *Porta House, Inc. v. Scottsdale Auto Lease, Inc.*, 120 Ariz. 115, 119, 584 P.2d 579, 583 (App. 1978) (persons dealing with public entity "charged with notice" of extent and limits of its power); *Sch. Dist. No. One of Pima County v. Lohr*, 17 Ariz. App. 438, 439, 498 P.2d 512, 513 (App. 1972) (same); *see also Schaefer v. Anne Arundel County, Md.*, 17 F.3d 711, 713 (4th Cir. 1994) (governmental entity's authorized purchasing agent had no power to delegate authority to others to sign contracts); *Peck v. Board of Ed. of Yuma Union High Sch. Dist.*, 126 Ariz. 113, 115, 612 P.2d 1076, 1078 (App. 1980) (school board cannot delegate functions to superintendent when it "would circumvent the language of the statute").

16

¶29    "The same principles of construction that apply to statutes also apply to administrative rules and regulations," *Kimble v. City of Page*, 199 Ariz. 562, ¶ 19, 20 P.3d 605, 608 (App. 2001), and a public entity's regulations, if consistent with its statutory scheme, "are entitled to be given the force and effect of law," *Civil Service Commission of City of Tucson v. Foley*, 75 Ariz. 364, 368-69, 257 P.2d 384, 387 (1953). Therefore, ABOR officials with contracting authority could not delegate contract-modification authority to the Steward engineers, regardless of the language of paragraph two. Moreover, even if a contracting officer could delegate his or her authority, nothing in the contract clearly does so here. *See Dunbar*, 255 P.2d at 748 ("'Public officers cannot bind the government they represent by acts outside their express authority.'"), *quoting Caton*, 61 N.E.2d at 807; *Lutzken v. City of Rochester*, 184 N.Y.S.2d 483, 501 (N.Y. App. Div. 1959) ("[W]here there is a lack of authority on the part of agents of a [governmental entity] to create a liability, except by compliance with well-established regulations, no liability can result unless the prescribed procedure is complied with and followed.").

¶30    Because the Steward engineers were not authorized by ABOR to bind it in contract, Kaman's breach of contract claim must fail as a matter of law. *See Pomeroy*, 60 Ariz. at 455, 139 P.2d at 454-55; *Bigler*, 128 Ariz. at 477, 626 P.2d at 1109. The trial court therefore erred in denying ABOR's motions for judgment as a matter of law on this issue. In light of this conclusion, we need not address ABOR's argument that the court erred in allowing Kaman's breach of contract claim to be decided by a jury in the absence of a written

agreement. Nor need we consider ABOR's contention that the jury's award of $0 to Kaman "negated an essential element of Kaman's breach of contract claim and compelled entry of judgment" for ABOR, or that this finding mandated a new trial because it was inconsistent with its determination that ABOR had breached the contract. Neither do we address ABOR's assertion that the trial court "erroneously admitted evidence regarding a supposed oral agreement between [ABOR] and Kaman" because this claim solely concerns Kaman's breach of contract claim. Finally, we need not consider ABOR's arguments that Kaman's breach of contract claim was untimely under the notice of claim statute and the statute of limitations, or that Kaman's evidence was insufficient to establish breach of contract damages, or that any breach by ABOR was not material.

Judgment as a Matter of Law - ABOR's Counterclaim

¶31        ABOR contends that, if this court "finds that judgment was improperly entered for Kaman on Kaman's breach of contract claim, [we] should direct the trial court to enter judgment for the University on its breach of contract counterclaim." In its underdeveloped argument, ABOR asserts "Kaman's sole defense to [ABOR's breach of contract] claim has always been that its performance under the Subcontract was excused because of the University's alleged material breach," and, if ABOR did not breach the contract, ABOR must

18

be successful as a matter of law on its counterclaim.[9] We note ABOR has not asked us to remand its counterclaim for a new trial.

¶32        Before the jury announced its verdict, ABOR asked the trial court to give special interrogatories to the jury, a request the court declined. After the jury found in Kaman's favor on ABOR's breach of contract counterclaim, but failed to provide a verdict on Kaman's claim against ABOR, ABOR again sought special interrogatories. The court simply sent the jury back to deliberate all claims after having provided it with additional instructions. The jury then returned two general verdicts, both in favor of Kaman, on its own breach of contract claim and on ABOR's counterclaim. "A general verdict implies a finding by the jury on every essential fact in favor of the prevailing party." *Lohmeier v. Hammer*, 214 Ariz. 57, ¶ 14, 148 P.3d 101, 106 (App. 2006).

¶33        Because it was a general verdict, we cannot know the basis of the verdict in favor of Kaman on ABOR's counterclaim. Our legal conclusion that a duly authorized contracting officer did not bind the state does not necessarily preclude the jury's factual

---

[9]Kaman did not respond directly to this argument, but rather confined itself to explaining how the jury could have both found for Kaman but awarded it no damages. Although we may regard this failure to specifically respond as a confession of error as to any debatable issue, we are not required to do so. *See Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 211 Ariz. 337, n.28, 121 P.3d 843, 869 n.28 (App. 2005).

finding on a separate cause of action that Kaman did not breach the contract.[10] ABOR fails to cite any authority supporting its position, and we decline to agree with it.[11]

¶34 Moreover, the jury was instructed that "[t]o succeed on a breach of contract claim, the party bringing the claim has the burden of proving the existence of a contract, the other side's breach of the contract, and that it has incurred damages as a result of the other side's breach." And, it was told that "[i]n order to recover damages for breach of contract, a party must prove the amount of those damages with reasonable certainty." Throughout the trial, Kaman extensively cross-examined the witnesses ABOR had used to prove its damages, including questioning the need for various expenditures, the hours ABOR had billed in its efforts to complete Kaman's work, the accuracy of ABOR's estimates of projected damages,

---

[10]Indeed, the jury could possibly have concluded that ABOR was not entitled to prevail on its breach of contract claim because it had anticipatorily breached the contract by requesting additional work for which it had no intention of paying, even if the jury was unable to find as a matter of law on Kaman's theory of the case that ABOR had breached the original contract by agreeing to changes in the design guidelines, thus binding ABOR to pay Kaman additional compensation.

[11]In its citation of supplemental authority, ABOR lists several cases in which an appellate court overturned a general verdict and remanded the case for a new trial because of trial error and because it was impossible for the court to tell whether the jury erroneously found for the party. *See Wiggs v. City of Phoenix*, 198 Ariz. 367, ¶ 17, 10 P.3d 625, 629-30 (2000); *S. Cas. Co. v. Hughes*, 33 Ariz. 206, 218-19, 263 P. 584, 588-89 (1928); *Bruce Church, Inc. v. United Farm Workers of Am.*, 169 Ariz. 22, 34-35, 816 P.2d 919, 931-32 (App. 1991); *Lewin v. Miller Wagner & Co.*, 151 Ariz. 29, 34-35, 725 P.2d 736, 741-42 (App. 1986). These cases are inapposite, however, for in none did the appellate court enter judgment on a counterclaim because of the reversal of the verdict on the principal claim. Only *Lewin* involved a counterclaim, which went unchallenged on appeal, although the defendants were successful in their attempt to reverse and remand for new trial a general verdict against them in the plaintiffs' malpractice claim. 151 Ariz. at 37, 725 P.2d at 744.

and whether some of the supplies ABOR had ordered could otherwise be reused by it. And, during closing arguments, Kaman disputed the damages claimed by ABOR, calling ABOR's estimates "inherently unreliable," and generally disputed ABOR's damage calculations. Whether ABOR had proven its damages with reasonable certainty was a materially disputed fact. For us to enter judgment as a matter of law in favor of ABOR on its counterclaim, we would be required to resolve these disputed facts. *See Silva v. De Mund*, 81 Ariz. 47, 53, 299 P.2d 638, 642 (1956) ("If the facts are undisputed, [appellate court] will direct the rendition of the correct judgment."); *Henderson v. Las Cruces Prod. Credit Ass'n*, 6 Ariz. App. 549, 553, 435 P.2d 56, 60 (1967) ("When a record is presented to an appellate court which leaves no question of fact to be determined and only a question of law to be determined, this Court may direct the entry of the judgment which should have been entered in the trial court."). Because the jury could have concluded ABOR had not proved Kaman had breached the contract, had itself breached the contract, or had not been persuaded by ABOR's damages evidence, either alternatively or collectively, we therefore affirm the trial court's denial of ABOR's motion for a new trial solely as to damages on its counterclaim.

Cross-Appeal

¶35        On cross-appeal, Kaman contends the trial court erred in not awarding it, as the prevailing party, attorney fees pursuant to A.R.S § 12-341.01. Section 12-341.01 provides, in relevant part as follows: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." "The decision

21

as to who is the successful party for purposes of awarding attorneys' fees is within the sole discretion of the trial court, and will not be disturbed on appeal if any reasonable basis exists for it." *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 178 Ariz. 425, 430, 874 P.2d 982, 987 (App. 1994).

¶36　　　　Kaman argues that it was the prevailing party because it prevailed on its claim and on ABOR's counterclaim. The trial court rejected Kaman's request for attorney fees and costs, "declin[ing] to find [it] the successful party after it sought in excess of Six Million Dollars and it obtained zero. While it is true that [it] successfully defended the University's claim, the evidence [and] work was intertwined. Accordingly, [t]he Court believes this matter essentially ended in a draw."[12] In light of our reversal of the award in favor of Kaman on its breach of contract claim, it is no longer the prevailing party on its claim, so this issue is moot.

¶37　　　　Because we reverse the jury's verdict in favor of Kaman on its claim, neither party has prevailed on their respective claims. In similar factual situations where neither party prevailed on its claim at trial, appellate courts have found a trial court's refusal to award attorney fees proper. *Gen. Cable Corp. v. Citizens Utilities Co.*, 27 Ariz. App. 381, 385, 555 P.2d 350, 354 (1976) ("Under the facts of this case, where a complaint seeks greater

---

[12]Kaman's complaint alleged specific damages of approximately $5.9 million as well as damages to be determined at trial. Kaman asked the jury for approximately $2.9 million in "[t]otal damages" during closing arguments. ABOR asserts it asked the jury for approximately $10.8 million during closing arguments.

damages than the counterclaim and the trial court has denied relief to both parties, we find that neither party is the 'successful party' under the provisions of § 12-341."); *see also Coldwell Banker Commercial Group, Inc. v. Camelback Office Park*, 156 Ariz. 214, 223-24, 751 P.2d 530, 539-40 (App. 1987) (finding it possible to have no successful party when one party prevails on complaint and other party prevails on counterclaim), *vacated in part on other grounds*, 156 Ariz. 226, 751 P.2d 542 (1988). The trial court did not abuse its discretion in declining to award attorney fees to Kaman. *See Sanborn*, 178 Ariz. at 430, 874 P.2d at 987.

### Disposition

¶38        We reverse the judgment in favor of Kaman on its breach of contract claim but affirm the judgment in its favor on ABOR's breach of contract counterclaim. We affirm the trial court's decision to deny Kaman's request for attorney fees. Both sides have sought attorney fees on appeal pursuant to § 12-341.01 and Rule 21(c), Ariz. R. Civ. App. P., 17B A.R.S. In our discretion, we deny the parties' requests for an award of attorney fees.

_____

J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

_____

JOSEPH W. HOWARD, Presiding Judge

_____

JOHN PELANDER, Chief Judge